STATE v. H. BURTON STRAIT.[1]

SAME v. HENRY SCHREINER.

March 24, 1905.

Nos. 14,252, 14,253—(230, 231).

**Criminal Law—Examination of Bankrupt's Trustee.**

In a criminal prosecution against a private banker for receiving deposits when his bank was insolvent, where such banker has made a petition in bankruptcy and his books had been turned over to the trustee, *held*, that such trustee with the books might be examined before the grand jury upon an investigation of the affairs of the bank, and that such examination did not involve any unlawful use of his private papers in violation of his constitutional rights.

**Grand Jury.**

It is within the sound discretion of the trial court to excuse members of a grand jury from sitting in the hearing of a matter being considered by that body, where, in its judgment, such juror would not be impartial and asks to be excused, although not challenged by the accused.

Defendants having been separately indicted in the district court for Scott county for accepting money on deposit in the Scott County Bank at a time when the bank was insolvent, moved severally to quash the indictments on the grounds set forth in the opinion. The motions were heard before Cadwell, J., who made orders denying the same and

[1] Reported in 102 N. W. 913.

thereafter, upon request of defendants, certified the cases to the supreme court for determination of the questions involved. Orders affirmed.

*F. J. Leonard,* County Attorney, for the State.

It was not error to use the books, papers and records of the defendants as evidence before the grand jury, the defendants being both bankrupts and the books, papers and records being in the possession of their trustee in bankruptcy. The evidence was competent. Thompson & M. Jur. § 642; Underhill, Crim. Ev. § 26; 1 Bishop, Crim. Proc. § 872, subd. 5; Clark, Crim. Proc. §§. 112, 113; Hughes, Crim. L. & Proc. § 2695; People v. Molineux, 58 N. Y. S. 155; Buchanan v. State, 41 Tex. Cr. App. 127. If the evidence be competent, it matters not by what means the evidence is obtained. Legatt v. Tollervey, 14 East, 302; 1 Greenleaf, Ev. § 254a; State v. Mathers, 64 Vt. 101; Commonwealth v. Dana, 2 Metc. (Mass.) 329; Commonwealth v. Tibbetts, 157 Mass. 519; Trask v. People, 151 Ill. 523; Cluett v. Rosenthal, 100 Mich. 193; Starchman v. State, 62 Ark. 538; State v. Griswold, 67 Conn. 290; Commonwealth v. Smith, 166 Mass. 370; State v. Pomeroy, 130 Mo. 489; Scott v. State, 113 Ala. 64; State v. Salverson, 87 Minn. 40.

*Charles R. Fowler* and *Edward H. Crooker,* for defendant Strait; *H. J. Peck* and *A. J. Edgerton,* for defendant Schreiner.

The court erred in denying defendants' motions to quash and set aside the indictments for the reason that through the compulsory process of the court, directed to Fred Habegger, defendant's trustee in bankruptcy, defendant's books of account, records and papers which were in said Habegger's possession solely as an officer and arm of. the court, were produced, offered and introduced in evidence before the grand jury which returned the indictment, without defendant's consent, and defendant was thereby by process of court compelled to be a witness against himself before said grand jury. Amendments 4 and 5 to the constitution of the United States guaranty to a citizen of the United States freedom from unlawful seizures and searches, and also provide that in a criminal case a man shall not be compelled to be a witness against himself. The fifth amendment is applicable as well

94 M.—25

to the books and papers of the person as to his verbal declarations as a witness. Boyd v. U. S., 116 U. S. 616; Johnson v. Donaldson, 18 Blatch. 287; In re Pacific Ry. Comm., 32 Fed. 241; Blum v. State, 94 Md. 375; People v. Swartz, 8 Am. Bankr. Rep. 487.

The question is not was incompetent evidence received by the grand jury; but were defendants' constitutional rights infringed by order or process of the court. The evidence here complained of was not procured by the trespass, force, fraud or deceit of persons not under the direction or control of the court. It was procured by subpoena issued for that purpose by this court in this proceeding, for use in this proceeding, directed to one who was lawfully in possession under authority and as an officer of another (the federal) court, for a special purpose. The evidence was procured by the exercise of the sovereignty of the state, as exercised by the court, to compel defendants to be witnesses against themselves, and is a violation of constitutional rights of which the courts will take notice. The constitutional prohibition is directed not to individuals, but to the federal and state governments, and acts on those branches of said governments which exercise sovereign power. This is the distinction between the case at bar and those cited by the state. State v. Griswold, 67 Conn. 290; Gindrat v. People, 138 Ill. 103. The proper distinction is well illustrated by comparison of the two following cases: Rosenthal v. Dickerman, 98 Mich. 208; Cluett v. Rosenthal, 100 Mich. 193. The evidence was offered as defendants' admissions made in and for the purposes of the bankruptcy proceedings, and its use in a criminal case is prohibited by the bankruptcy acts. 30 St. 548, § 7. This prohibition applies as well to the state courts. Brown v. Walker, 161 U. S. 591, 606; Easton v. Iowa, 188 U. S. 220. And the reason for such prohibition is the manifest and public inconvenience which would result from a contrary rule.


LOVELY, J.

This cause is certified here by the district court for Scott county after its refusal to quash and set aside indictments against defendants in view of the importance of the questions submitted.

Defendants Henry Schreiner and H. B. Strait were partners engaged in private banking business at Jordan under the name of the

Scott County Bank. Indictments were returned against each for having received specified sums of money when the establishment they were conducting was alleged to be unsafe and insolvent, contrary to chapter 219, p. 504, Laws 1895. Upon arraignment defendants moved to set aside the indictments upon the ground that the same were illegally found and returned. This contention was supported by affidavits, which, so far as material here, disclose the following undisputed facts: Defendant Strait, by a voluntary petition in bankruptcy, sought the protection of the federal court. A receiver was first appointed, and such proceedings were thereafter had that the assets, with the books and papers of the Scott County Bank, were turned over to a trustee (Fred Habegger), who in this way had possession thereof.

An investigation of the affairs of the bank was instituted at the October, 1904, term of the district court for Scott county, though neither Strait nor Schreiner was under recognizance to appear. A subpœna was issued to the trustee, Habegger, personally to attend before the grand jury, where he brought the books and papers of the bank at the request of the prosecuting attorney. Indictments were returned severally against Schreiner and Strait, when it was moved in behalf of Schreiner, and afterwards of Strait, to set aside the same upon the ground that the use of the books and papers of the bank in the hands of Habegger was improper, and thereby infringed defendants' constitutional rights as citizens secured by section 7 of article 1 of the state constitution, which provides that no person shall be compelled in any criminal cause to be a witness against himself, and by section 10, which provides that "the right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated."

While it would not be proper to disclose testimony received before the grand jury, and it would ordinarily be presumed that material evidence only was introduced, yet we are not inclined, in view of the probable consequences of our decision at the trial of the cause, to avoid the questions raised whether the use of the trustee and the books of the bank was in defiance of the constitutional rights secured to the citizen under the organic law of the state, particularly since it has been regarded as of importance by the trial court.

In State v. Gardner, 88 Minn. 130, 92 N. W. 529, we held that a defendant in a criminal case should not be compelled to go before the grand jury in violation of the guaranty referred to, and give evidence either directly or indirectly against himself, or tending to affect his rights upon an indictment founded thereon. The immunity belonging to the defendant invoked for his benefit in that cause was personal, and our ·decision went no further than to hold that it was an infringement of his rights in violation of the plain letter of the constitution, which invalidated the indictment returned.

In the case of Boyd v. U. S., 116 U. S. 616, 6 Sup. Ct. 524, where under an act of Congress proceedings in rem were instituted to establish a forfeiture of goods alleged to have been fraudulently imported without paying the duties thereon, it was held that an order of the court made under the act referred to requiring claimants of the goods to produce an invoice in court for inspection of the government attorney (to be offered in evidence by him, or to be taken as admitted) was an unconstitutional exercise of authority; and this is as far, upon investigation, as we are able to discover any interpretation of these safeguards in our American jurisprudence protecting private papers from search or seizure or the individual from being compelled to answer incriminating interrogatories. As we understand this decision, the objection to be of potential force must directly involve the action of the court in using compulsory means to obtain evidence which deprives the accused of the protection which is personal to him and to his private papers directly involved. It may be well to state that the court say in their opinion in this case that by the proceeding under consideration the court was attempting to extort from the party his private papers and books, and to make him liable for a penalty or forfeiture of his property.

In the case at bar no subpœna or process to produce the books of the bank was directed to the defendants, or authority exerted to obtain their possession from the person in whom their custody was originally held. No objection appears to have been made to the delivery of the books to the receiver or trustee in bankruptcy. Records and documents which were of their nature quasi public were made subject to the inspection of the court for an investigation of the affairs of the bank to determine the rights of the defendants and their

creditors. If there was any immunity attached to the books by rea-
son of the fact that they tended to show incriminating circumstances,
the accused parties were not interrogated with reference to the same, or
under the control of any court or compulsory process required to pro-
duce them for use.

It cannot, upon reasonable grounds, be justly claimed that courts
will institute an inquisition upon the means by which documentary
testimony is obtained, even though evidence may have been illegally
taken from the possession of the party against whom it is offered or
otherwise unlawfully obtained. This is no valid objection to their
admissibility if they are pertinent to the issue. 1 Greenleaf, 325n. De-
fendants rely upon the case of Blum v. State, 94 Md. 375, 51 Atl. 26,
to support their contention, and to a considerable extent it does so; but
we are not prepared to accept the reasoning nor the conclusions of the
court in that case. It assumes to follow the decision of Boyd v. U.
S., supra, and rests upon analogies it discerns therein; but a com-
parison of these two cases will show that they are clearly distin-
guishable and that the immunity which was sought to be enforced
in the federal case applied to the direct authority of the court to
compel a production of private papers against the protest and op-
position of the parties affected thereby.

So far as the facts in the case at bar are concerned, the books and
papers were to a certain extent of a public nature, containing, doubt-
less, accounts of depositors to a large extent, which came into the
hands of a trustee in bankruptcy. No objection was made to the use
of them by the defendants. They were in fact surrendered to the
trustee for all legal uses. Although it was said to have been without
their knowledge, yet it will not be implied that whatever would be
injurious to an accused person would be in opposition to his wishes,
or require that the court should assert his rights, or on that ground
that the court would forbid its production in the ordinary and legal
course of administration of law instituted, as here, by a voluntary
proceeding of accused, whereby the same went into the hands of the
agent of the court for inspection, and the defendant's personal rights
were not interfered with, or the security of his papers violated, in
the sense which would invoke the protection of the constitutional
guaranty relied upon by the defendants. We are of the opinion that

investigation, so far as the claim of the defendants is concerned, was within the scope of legitimate inquiry, and the views of the trial court in this respect are correct.

When the district court convened there was a full complement of grand jurors, twenty three in number. Three were excused by the court on account of being over age; still another was excused without any reason appearing therefor; another was excused on account of being related to Henry Schreiner, when the panel returned into court and reported that they had disposed of their business except the cases of the state against Schreiner and Strait. Five members of this panel so reported severally asked to be excused on the ground that each was a depositor in the Scott County Bank, which failed in November, 1903, and, each being sworn, so testified, when it was ordered by the court that such grand jurors be excused, when it appeared to the court that there was a deficiency, there being only thirteen remaining when sixteen were necessary, at least, for a quorum; whereupon a special venire was issued to the sheriff requiring him to summon ten electors to appear forthwith to supply the deficiency, which was done. The special venire was returned within due time with the names of ten persons appearing thereon who were sworn, and added to the panel, when the entire grand jury retired to perform their duties, and in due time returned the indictments which are made the subject of this review.

It is now claimed on the part of defendants that the grand jury as newly formed and constituted in the manner stated was an illegal body; that ten of their number had no right to participate in its proceedings, and such participation invalidated every act of the body itself. It is insisted that the authority of the court to excuse a member of the grand jury is to be found in section 7181, G. S. 1894, which reads as follows:

> The court shall not excuse from service upon either the grand or petit jury any person duly drawn and summoned to serve thereon, except upon the ground that the person so summoned and seeking to be excused is either physically or mentally unable or unfit, in the opinion of the court, to attend or serve as a juror,

or by reason of serious sickness of some immediate member of
the family of the person so summoned.

This is a general provision, applying to all juries, and cannot be construed literally to limit the discretionary powers of the court, but more properly to apply to such excuses as jurors may offer themselves when seeking to be relieved from duty. The word "shall" in this section, as is often the case, is to be construed as if it were permissive, rather than mandatory, for it must be obvious that there are many reasons why a juror may be excused by authority of the court in cases not mentioned—as of his own sickness—and in turning to causes for challenge of a juror in sections 7190 of this chapter, where such challenges are interposed by an accused party under recognizance, the authority of the court to excuse a juryman who is biased and cannot act impartially is clearly recognized in the sixth subdivision of such section. We have no doubt but that in the orderly conduct of the business of the court in the formation and submission of matters to a grand jury the trial court is clothed with reasonable judicial discretion to excuse jurors, and that the court is not to be deprived of such authority because the legislature has seen fit to declare one or more grounds of excuse for relieving such juror from service. Thompson & M. Jur. § 580.

Had the defendants appeared and objected to jurors because they had been depositors in the Scott County Bank, and were therefore presumably biased against them, and the court had discharged them on that account, no objection could have been justly made to its course in that respect; certainly the defendants could not have been prejudiced by its action. Neither could they have been prejudiced by the independent action of the court, though no challenges were interposed by either defendant. In other words, its acts were judicial, not arbitrary, and tended to promote a fair consideration of the rights of the accused persons. Had the trial judge, upon no grounds except a manifest purpose to set aside one jury and to supplant it with another, taken the action criticized, another question would be presented, but the course pursued was considerate, and, we think, clearly discretionary.

We are of the opinion that the orders of the trial court were within the line of its judicial duties, and must be sustained.

Orders affirmed.