STATE v. H. BURTON STRAIT.[1]

November 9, 1906.

Nos. 14,879—(11).

**Bank—Receiving Deposit While Insolvent.**
Appellant was convicted of the offense of receiving a $90 deposit in his bank, knowing it was unsafe and insolvent. Evidence examined, and *held* that although the testimony is sufficient to show that appellant knew, or had reason to know, the bank and himself were in an unsafe and insol-

[1]Reported in 109 N. W. 598.

vent condition, it is not sufficient to prove that he voluntarily, knowingly, or negligently received the money, or permitted it to be received as a deposit.

Appeal by defendant from an order of the district court for McLeod county, Morrison, J., denying a motion for an order vacating and setting aside the verdict and for a new trial. Reversed and a new trial granted.

*W. C. Odell, Frank M. Nye,* and *E. H. Crooker,* for appellant.

*Edward T. Young,* Attorney General, *C. S. Jelley,* Assistant Attorney General, *F. J. Leonard,* County Attorney, and *F. C. Irwin,* for respondent.

LEWIS, J.

Appellant was indicted and convicted for unlawfully and feloniously receiving and accepting the sum of $90 while engaged in carrying on a private banking business, as a member of the firm of the Scott County Bank, a copartnership, consisting of himself and Henry Schreiner.

Throughout the trial the state assumed the burden of proving three principal facts, which it deemed necessary in order to constitute the elements of the crime charged. (1) That the bank was conducted by appellant and Henry Schreiner, as copartners, at the time the money was received on October 31, 1903; (2) that appellant knew, or had reason to know, that the bank was at that time in an unsafe and insolvent condition; (3) that the money was deposited and received in the bank under such circumstances as to make appellant guilty, within the meaning of chapter 219, p. 504, Laws 1895. While Schaefer, the cashier, a witness on behalf of the state, was on the stand, the defense introduced in evidence certain documents for the purpose of disproving the state's first proposition, and to show that the partnership had been dissolved on March 18, 1903. Exhibit B purported to be a bill of sale of all of Mr. Schreiner's interests in the bank to appellant, and Exhibit C an agreement under the terms of which Schreiner agreed to remain in the employ of appellant as manager of the bank, with the option to repurchase a one-half interest. The state then introduced in rebuttal Exhibits 132 and 133. Exhibit 132 was an affidavit made for the purpose of securing an amendment to an answer in an action then pending against the copartnership, and Exhibit 133 was

the amended answer in the action, and contained an admission that the parties mentioned were copartners in the business under the firm name of the Scott County Bank, and was verified by Schreiner on April 27, 1903.

These exhibits were objected to on the part of the defense as irrelevant, incompetent, and immaterial, and that the declarations of Schreiner would not be binding upon Strait. They were received for the purpose of impeaching the statements of Schreiner, contained in Exhibits B and C. The state insists that the copartnership was not a material issue, and that, if it was error to receive Exhibits 132 and 133 in evidence, it was error without prejudice. The defense contends that, the state having made copartnership an issue all through the trial and insisted upon the introduction of Exhibits 132 and 133 to prove copartnership, the effect was prejudicial because the jury were permitted to pass upon the question whether a fraud had been perpetrated by appellant in the execution of Exhibits B and C, which depended upon a subsequent declaration by Schreiner, who was not a witness in the case. Whether appellant was conducting the business as a copartner or as a private party was immaterial, unless the defense was prejudiced as claimed. Whether there was such prejudice we deem it unnecessary to determine at this time, inasmuch as a new trial must be granted upon other grounds, and it will not be presumed that the same question will arise again.

It appears that Schreiner and appellant had been engaged as copartners in the banking business under the name of the Scott County Bank from 1898 until October 31, 1903, unless the partnership had been dissolved, as claimed by the defense, March 18, 1903. During all of that period Schreiner was the active manager in charge, and all the routine banking business was conducted by himself and the cashier. During all of this period appellant resided either in St. Paul or Minneapolis, and was engaged in other business. It was his custom to visit the bank about once a week, or when called to Jordan for some special purpose. While he did not make himself acquainted with the details of the business from day to day, he held the nominal position of president, examined the books to some extent on each of his visits, was in consultation with the other officers, and during the year 1903 negotiated several loans for the benefit of the bank. No serious ques-

tion is raised by the defense as to the insolvency of the bank for a considerable time prior to October 31, 1903, and the evidence was sufficient to warrant the jury in holding that appellant knew, or had reasonable cause for knowing, that the bank, Schreiner, and himself were financially unsafe and insolvent on October 31, 1903. On this point we think the case is governed by the general principles announced in State v. Quackenbush, 98 Minn. 515, 108 N. W. 953, viz.: "A man has good reason to know all facts of which he would have acquired actual knowledge, had he investigated conditions suggested by circumstances which were known to him." No reasonable doubt can be raised upon the record that appellant knew, or had reason to know, the financial condition of the bank at the time the alleged deposit was received.

The important question in this case, however, is whether on October 31, 1903, a deposit was made and received as charged in the indictment.

In connection with what has already been said as to appellant's connection with the active business of the bank and his knowledge of its details, the following evidence has a direct bearing upon the question: On October 30 Schaefer, the cashier, had a conversation with appellant at Jordan, stating that the funds of the bank were getting rather low, and that it would be necessary to make provision for meeting the demands that might come in. In response to this information, appellant drove at once to Chaska and Shakopee, villages not far distant, and made an effort to borrow money for the purpose of replenishing the funds of the bank, and, failing in his effort at these places, took the afternoon train for St. Paul and tried to procure the money there, and upon being unable to do so went to Minneapolis, where he resided, and at an early hour the morning of October 31 visited the office of his attorney and laid the whole situation before him, and asked for legal advice. As a result of the consultation, it was determined that the bank should at once be closed. Appellant immediately attempted to get into telephonic communication with the cashier at Jordan, and, though considerable time elapsed before connection could be secured, succeeded in reaching him about ten o'clock and informed him that the bank must be immediately closed, and dictated a notice to that effect. He also inquired if any money had been received that

morning, and, upon being told that two deposits had been made, directed the cashier to put the amounts of such deposits in envelopes, marking each envelope with the name of the person from whom the deposit was received, and return the same immediately to such depositors. The cashier testified that he followed appellant's instructions, put the amount (though he could not say it was the identical money) received from the two depositors that morning in separate envelopes, addressed to the respective depositors, and laid the same in the safe. It appears that after the closing of the bank, but before the money had been returned to the two depositors, a committee representing the bank's depositors, headed by the county attorney, visited the bank, and in the excitement the actual delivery of the envelopes was overlooked and the receiver in bankruptcy took charge of appellant's estate, including the bank and its contents.

We will assume that the referee in bankruptcy acquired title to the money for the creditors as against the depositors, so that, conceding there was technically a deposit, in the sense that the depositors lost title to their money, yet is the inference warranted from the facts and circumstances stated that there was a deposit such as to constitute the criminal offense contemplated by chapter 219? It is argued on behalf of the state that it was immaterial what effort appellant may have made to prevent the deposits being made, so long as it did not in fact result in the actual return of the money to the depositors; that what his intention may have been was immaterial, and he was bound absolutely by the technical legal result of his cashier permitting the money to remain in the bank and pass into the hands of the referee. Such is not our view of the law. We are decidedly of the opinion that, if the evidence referred to is true, appellant took every reasonable precaution which could be taken to prevent the occurrence of the very act for which he stands charged in the indictment. The inevitable inference from the declarations and acts of appellant, and from all the evidence, is that the accused did not wilfully or negligently receive, or permit his agents to receive, the money. While it is unnecessary to cite authorities upon such a question, we may refer to McClure v. People, 27 Colo. 358, 61 Pac. 612, where, under a similar statute, the court in discussing the duties of an officer, said: "After the bank was insolvent, and after defendant knew it, or would have

known it, had he not kept himself in ignorance of its financial condition by criminal negligence, he neither revoked the authority of the teller, nor did anything to discourage or put a stop to the taking of deposits by closing the doors, or giving notice that deposits would not be received." By this language the court made the distinction between that case and the one now under consideration. See also Com. v. Junkin, 170 Pa. St. 194, 32 Atl. 617, 31 L. R. A. 124.

Order reversed. New trial granted.