## STATE v. ARTHUR Z. DREW.[1]

February 25, 1910.

Nos. 16,383—(19).

**Deposit in Insolvent Bank — Knowledge of Insolvency — Evidence.**
    Section 5118, R. L. 1905, makes it a criminal offense for a banker to receive money on deposit when he is insolvent, and knows or has good reason

1Reported in 124 N. W. 1091.

---

[Note]. As to criminal liability for receiving money into insolvent bank, see notes in 31 L.R.A. 124, 20 L.R.A.(N.S.) 444, and 22 L.R.A.(N.S.) 266.

to know that he is insolvent. Appellant, a private banker, was on trial under an indictment which charged that he received money on deposit when he was insolvent, and that he well knew he was insolvent. *Held:*

1. It was error to instruct the jury that it was sufficient if the state proved beyond a reasonable doubt that appellant had good reason to know that he was insolvent.

2. A private banker being on trial for receiving money on deposit when he was insolvent, the schedules of creditors, assets, and liabilities filed by him in involuntary bankruptcy proceedings are not admissible in evidence to prove insolvency, when objected to upon the ground that the effect would be to compel him to be a witness against himself.

The defendant was convicted in the district court for Ramsey county upon an indictment under R. L. 1905, § 5118, charging him with receiving a deposit in his private bank, the Bank of Hamline, while he well knew that he was insolvent. His motion for a new trial was denied, Olin B. Lewis, J. He was then sentenced to two years' imprisonment at hard labor. From the judgment entered thereon, he appealed. Reversed and new trial granted.

*J. P. Kyle* and *D. W. Lawler,* for appellant.

*George T. Simpson,* Attorney General, and *Richard D. O'Brien,* County Attorney, for respondent.

LEWIS, J.

Appellant, Arthur Z. Drew, was tried and convicted under an indictment reading as follows:

"The said Arthur Z. Drew, on the 15th day of January, A. D. 1908, at the city of St. Paul, in said county, then and there being engaged in and doing a private banking business, and was then and there, to wit, on the 15th day of January 1908, at the city of St. Paul, in said county, engaged in and doing business as a private banker under the style and name of Bank of Hamline, and he, the said Arthur Z. Drew, did then and there, as such private banker, wrongfully, unlawfully, and feloniously accept and receive on deposit in said bank from one Gust A. Anderson certain money, to-wit, diverse and sundry good, genuine, current and lawful treasury notes, bank notes and coins of the United States of America, duly

issued by and out of the treasury department of said United States of America, the good, genuine current and lawful money of said United States, of the value of and to the sum and amount of one hundred sixteen dollars, a more particular description of which is to this grand jury unknown, said money, and all thereof, being then and there the personal property of said Gust A. Anderson, and at said time, when said money was so accepted and received on deposit in said bank by the said Arthur Z. Drew as aforesaid, he, the said Arthur Z. Drew, was both as an individual and as such private banker unsafe and insolvent, and he, the said Arthur Z. Drew, at the time he so accepted and received the said money on deposit in said bank as aforesaid, well knew that he, the said Arthur Z. Drew, both as an individual and as such private banker, was unsafe and insolvent."

Of the numerous assignments of error, presenting various legal questions, we shall confine ourselves to those which may be grouped under two heads: (1) Did the court err in instructing the jury as to the offense charged and the character of the evidence necessary to support it? (2) The admissibility, in evidence, of the bankruptcy schedules.

1. The statute under which appellant was indicted (section 5118, R. L. 1905) provides that every officer, director, etc., of a banking house, or similar institutions, who shall accept or receive on deposit, money, bank bills, etc., when he knows or has good reason to know that such person, bank, association, etc., is unsafe or insolvent, and every person knowing such insolvency or unsafe condition, who shall be accessory to, or permit or connive at, the accepting or receiving on deposit therein or thereby, any such deposits, shall be guilty of a felony.

Appellant was conducting a private banking business at Hamline, in the city of St. Paul, under the name of Bank of Hamline, and at the same time he was a stockholder in the State Bank of St. Paul, with a capital of $25,000, divided into 250 shares, of $100 each, of which he owned 190 shares. He was also interested in a private

banking institution known as the Midway Bank, in St. Paul, and also in the Bank of Grantsburg, located at Grantsburg, Wisconsin, and in several other business enterprises.

The trial court charged the jury that the state was not required to show that the defendant had actual knowledge that he was insolvent; that it was sufficient if the state proved beyond a reasonable doubt that appellant had good reason to know that fact. This raises the question whether the state was not required to prove the offense as charged in the indictment, viz., that appellant knew he was unsafe and insolvent at the time the deposit was received.

It is possible that members of the profession have been misled with reference to the meaning of this statute by certain statements in the opinion in State v. Quackenbush, 98 Minn. 515, 108 N. W. 953, and in State v. Strait, 99 Minn. 327, 109 N. W. 598. An examination discloses that in both of those cases the indictments were identical with the one here under consideration. In the Quackenbush case the court instructed the jury that it was necessary to find from the evidence that the defendant knew he was insolvent at the time of receiving the deposit, and the question now before us was not involved nor considered on the appeal. That part of the opinion in the Quackenbush case, referred to by the state, involved an entirely different matter. The court was discussing the merits of an instruction to the effect that a person doing a banking business was presumed to know that he was insolvent, and the language used should be considered with reference only to the instruction then under consideration. The language used in the opinion in the Strait case may be explained on similar grounds, so that, so far as judicial construction is concerned, we are free to treat the subject as one of first impression.

The statute, for some reason, established degrees of knowledge of insolvency: First, actual knowledge; and, second, good reason to believe it. A banker receiving deposits of money cannot shut his eyes to his own financial status, and he is required to investigate conditions which are suggested by circumstances already known to him. But the failure to discover a condition unknown to him, but which in the exercise of reasonable diligence, might have been discovered, is

quite a different thing. The state charged appellant with knowledge of insolvency, and the evidence must be sufficient to warrant the jury in finding such to be the fact. The purpose of an indictment is to notify the defendant upon what issue he will be put to trial, in order that he may make preparation; and, while appellant may have been prepared to meet the issues presented, there was nothing in the indictment to apprise him that he was upon trial for a failure to exercise diligence in acquiring information which he did not have.

It is not intended to intimate that under such an indictment the state is required to prove knowledge by positive, direct evidence of the defendant's state of mind. But the evidence must be sufficient to prove beyond a reasonable doubt that he must have known of his insolvency; that fact having been established. We are of opinion that it was error to charge the jury that it was sufficient if they should find that he had reason to believe he was insolvent.

2. The state offered in evidence the schedules of bankruptcy filed by appellant in involuntary bankruptcy proceedings commenced by petition January 22, 1908. They were objected to upon the ground that it was in violation of the constitutional guaranty, state and national, that no person shall be compelled in any criminal case to be a witness against himself. The federal supreme court has always jealously guarded the constitutional guaranty that a person shall not be required to incriminate himself. Thus in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, the court took the position that an order of the trial court requiring the claimants of goods to produce a certain invoice in court for the inspection of the government attorney and to be offered in evidence was an unconstitutional exercise of authority, and that the compulsory production of account books and papers for the purpose of being used against a person in a criminal case is equivalent to compelling him to be a witness against himself, within the prohibition of the constitution. So in Counselman v. Hitchcock, 142 U. S. 547, 12 Sup. Ct. 195, 35 L. Ed. 1110, where the court had under consideration the right of the grand jury to examine a person charged with violating an interstate commerce act, it was declared that the meaning of a constitutional provision is

not merely that a person shall not be compelled to be a witness in a criminal prosecution against himself, but that its object is to insure that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime, and it was held that section 860 of the Revised Statutes of the United States (U. S. Comp. St. 1901, p. 661) was not coextensive with the constitutional provision, and did not grant complete immunity, as applied to the facts of that case.

After that decision was rendered the immunity provisions were broadened by the act of congress providing that no person should be prosecuted, or subject to any penalty or forfeiture, for or on account of any transaction, matter, or thing concerning which he might testify or produce evidence, documentary or otherwise, before the commission, and the court then held, in the case of Brown v. Walker, 161 U. S. 591, 16 Sup. Ct. 644, 40 L. Ed. 819, that the immunity thereby granted was coequal with the constitution, and that the statute afforded absolute immunity against prosecution, federal or state, and deprived the witness of his constitutional right to refuse to answer. Attention is called to the distinction between the two cases in Burrell v. Montana, 194 U. S. 572, 24 Sup. Ct. 787, 48 L. Ed. 1122, wherein it was decided that the time to take advantage of a statutory protection is when the testimony is offered, and that a witness who voluntarily testified cannot resist the effect of his testimony by claiming that he could not have been compelled to give it.

The schedules filed by a bankrupt in bankruptcy proceedings constitute evidence which cannot be used to incriminate a witness, unless the immunity statute is broad enough to completely absolve him. Johnson v. United States, 163 Fed. 30, 89 C. C. A. 508, 18 L.R.A. (N.S.) 1194; Cohen v. United States, 170 Fed. 715, 96 C. C. A. 35. Under the federal authorities appellant was entitled to object to the introduction of the schedules in evidence upon the ground that they contained statements bearing upon the question of his insolvency. Is there any reason why the same principle should not apply in this state, where the same constitutional guaranty is in force?

Had the evidence contained in the schedules been filed in voluntary

bankruptcy proceedings, appellant would not be in a position to complain, having without restriction given it to the world by causing it to be filed in a public office. State v. Strait, 94 Minn. 384, 102 N. W. 913. . But that rule does not control in this case. By subdivision 9, § 7, of the bankrupt act (Act July 1, 1898, c. 541, 30 St. 548 [U. S. Comp. St. 1901, p. 3425]), a bankrupt is required to file in the court, under oath, a complete list of the amount and kind of his property, and a list of his creditors, within ten days after his adjudication as a bankrupt. Appellant complied with the statute, made up lists·of his property and creditors, attached his signature, made oath to the same, and filed the schedules in a proceeding which had been forced upon him; but his voluntary acquiescence with the provisions of the law did not constitute the act as voluntary.

It has been suggested that the schedules were not introduced for the purpose of proving the insolvency of appellant, but to show his assets and liabilities other than those found in the books, and that no harm was done, for the reason that according to the schedules appellant's assets were $14,000 more than his liabilities.

We are unable to accept this explanation of the use of the schedules. They were used during the trial in aid of one of the facts the state was compelled ·to establish, viz., insolvency. "The constitutional guaranty not only protects a person from being compelled to give direct evidence tending to establish his guilt, but also from giving any circumstance or link in the chain of evidence which may tend to convict him of a crime." State v. Gardner, 88 Minn. 130, 92 N. W. 529. "Where a witness is compelled to testify against himself, the injury inheres in the violence done to his rights. It is not susceptible of proof, nor the policy of the law to require it, and the injury done to the public in such ·case outweighs that suffered by the defendant. It is a matter of the highest public policy that crimes shall be punished by legal methods." United States v. Edgerton (D. C.) 80 Fed. 374.

· The instruction· of the court on. the question of appellant's good character was to· the effect that the jury might return a verdict of guilty if they should find beyond a reasonable doubt that he com-

mitted the crime, even though the evidence satisfied them that he had always borne a good reputation prior thereto. Error was assigned upon the ground that the jury were instructed that they might find defendant guilty without regard to his previous good character. No exception was taken to this instruction, and the record does not inform us whether it was presented to the trial court upon the motion for a new trial, and we cannot consider it.

Reversed, and a new trial granted.

O'BRIEN, J., took no part.