### STATE v. PETER L. NEWMAN and Another.[1]

December 11, 1914.

Nos. 18,796—(3).

Criminal law — evidence upon former trial.

Defendants were convicted of the crime of kidnapping, and appealed. It is held:

(1) The verdict is sustained by the evidence.

(2) The evidence of one of the defendants given on a former trial was properly received in evidence as against such defendant. It was given voluntarily, and its admission in evidence on the second trial was not a violation of said defendant's privilege against self incrimination.

(3) The evidence of one of the defendants given on the former trial was not admissible as against the other defendants on trial. It being a joint trial, the evidence was properly in the case, and the jury should have been instructed that it was not evidence as against the other defendants. There being no request or suggestion to the trial court to give such an instruction, it was not error to fail to do so.

Peter L. Newman and William J. Sullivan were indicted by the grand jury, tried in the district court for Crow Wing county before McClenahan, J., and a jury, and convicted of the crime of kid-

1 Reported in 149 N. W. 945.

napping. From an order denying their motion for a new trial, defendants appealed. Affirmed.

*Alderman & Clark* and *M. E. Ryan,* for appellants.

*Lyndon A. Smith,* Attorney General, *Alonzo J. Edgerton,* Assistant Attorney General, and *G. S. Swanson,* County Attorney, for the state.

BUNN, J.

Defendants Newman and Sullivan, with two others, were tried jointly on an indictment charging them with the crime of kidnapping. The jury acquitted the other defendants, but found Newman and Sullivan guilty. They moved for a new trial, and appealed from an order denying the same.

It is claimed, though not very strenuously, that the evidence is not sufficient to justify a verdict of guilty.

G. S. 1913, § 8628, so far as material here, reads as follows: "Every person who shall wilfully: 1st. Seize, confine or inveigle another, with intent to cause him, without authority of law, to be secretly confined or imprisoned within the state, or sent out of it, to be sold as a slave, or in any way held to service, or kept or detained against his will, * * * shall be guilty of kidnapping, and punished," etc.

The indictment charged that the defendants on April 17, 1913, at the village of Crosby in Crow Wing county, did wilfully, unlawfully and feloniously seize, confine and inveigle one Theodore Sjogren, with intent to cause him, without authority of law, to be secretly confined within the state, and set out the acts constituting the seizure, confinement and inveigling of Sjogren.

The evidence justified the jury in believing beyond a reasonable doubt that the following facts were true:

Sjogren was a miner and had come from his home in Michigan to work in one of the mines near Crosby. The miners started a strike and Sjogren was a member of a committee appointed to confer with the superintendent and the "captain" of the shaft. Several conferences had been held prior to the evening of April 17, 1913. On that evening Sjogren visited a pool hall in Crosby and attended a moving

picture show. After coming out from this show with two companions, and as he was passing an automobile standing near the sidewalk, revolvers were pointed at his face, and he was ordered to step into the automobile. He complied, and the automobile drove off. Defendants Newman and Sullivan were two of the men, the others being the two defendants who were acquitted and one Payne, who was indicted but not tried. All of the men had revolvers, and dark handkerchiefs over their faces. They gagged Sjogren and went through his pockets, though they took nothing from him. The machine was driven to Brainerd, with more or less of threats and shooting on the way. In Brainerd the five men conducted Sjogren to a room in a hotel, where they had refreshments. Sjogren was told that if he would not go back to the mines, but go home to Michigan, the men would let him go, but would shoot him full of holes if he ever came back or wrote to his friends in Crosby. Sjogren promised, and his captors left him in charge of Payne, one of their number, the others going back to Crosby. Payne, with the help of a revolver, kept Sjogren in charge, saw that he bought a ticket for Duluth, and took the train with him. Payne got off at Deerwood, Sjogren continuing to Duluth.

It is manifest that this story, if believed, was sufficient to convict defendants of wilfully seizing, confining or inveigling Sjogren, with the intent to cause him, without authority of law, to be secretly confined or imprisoned within the state. There is little room to question the substantial features of Sjogren's tale, as told above, and we are obliged to hold that the conviction was justified by the evidence. We are not concerned with the motives of the men who thus attempted to get out of the way one of the committee of strikers. It is not pretended that they acted with any legal authority.

. The only question in the case that merits special mention is one of evidence. This was the second trial. On the first defendant Newman testified on his own behalf. On this trial, the state offered his testimony given on the first trial. The attorney for all of the four defendants on trial entered a general objection that the testimony was incompetent, irrelevant and immaterial. The objection was overruled, and defendants excepted.

It is claimed that the admission of this evidence was error as to defendant Newman, on the ground that it was a violation of his constitutional privilege to refuse to incriminate himself. We cannot adopt this view. The evidence was given voluntarily on the former trial. We see no distinction between his declarations there under oath, and voluntary statements made out of court. He is not deprived of his constitutional privilege, where the declarations offered against him were made voluntarily. It is otherwise where the statements offered were made under legal compulsion. The distinction is clearly perceived by comparing State v. Strait, 94 Minn. 384, 102 N. W. 913, and State v. Drew, 110 Minn. 247, 124 N. W. 1091, 136 Am. St. 491, the former a case of declarations made by a bankrupt in voluntary bankruptcy proceedings, which were held admissible, the latter a case where the declarations were made in involuntary proceedings and held inadmissible. The authorities elsewhere support the view that the evidence of Newman on the former trial was admissible as against him on this trial. 40 Cyc. 2541, and cases cited. Commonwealth v. Reynolds, 122 Mass. 454; People v. Kelley, 47 Cal. 125; People v. Arnold, 43 Mich. 303, 5 N. W. 385, 38 Am. Rep. 182; State v. Gilman, 51 Me. 206; State v. Witham, 72 Me. 531; Dickerson v. State, 48 Wis. 288, 4 N. W. 321.

It is equally plain that Newman's testimony on the former trial was not admissible as against defendant Sullivan. This is conceded. But it was properly received as against Newman. It was a joint trial, defendants not availing themselves of their right to be tried separately. The evidence was therefore rightly in the case, but could not be used as against the defendants other than Newman. The court, on such a suggestion being made, would undoubtedly have so instructed the jury. But the attention of the court was in no way called to this situation by any request or suggestion fro 1 counsel. There was no error under the circumstances. It should be added that it is difficult in any event to see how the admission of this evidence prejudiced defendant Sullivan. He went on the stand himself and gave substantially the same story of the automobile ride and supper in Brainerd that Newman gave in his testimony on the former trial.

Order affirmed.