# STATE v. ANTON OLSON.

143 N. W. (2d) 69.

May 31, 1966—No. 40,301.

*Thuet & Todd, John J. Todd,* and *Robert F. Collins,* for relator.

*Robert W. Mattson,* Attorney General, and *Gerard W. Snell,* Solicitor General, for respondents.

NELSON, JUSTICE.

Prohibition on the relation of Anton Olson to require the District Court of Ramsey County and Dr. Philip K. Artz to desist from proceeding with a psychiatric examination of relator.

Relator has been charged on two counts of first-degree murder. Following a change of venue from Morrison County to Ramsey County, he is at present incarcerated in the Ramsey County jail pending trial.

The state on January 14, 1966, brought two identical motions before the Ramsey County District Court for an order directing relator to submit to a psychiatric examination by a qualified psychiatrist for the purpose of determining whether relator was legally insane at the time of the commission of the alleged offenses. Relator's attorneys opposed the motions on the grounds that (1) such a compulsory examination would violate relator's constitutional rights against self-incrimination, and (2) there is no statutory or legal basis in the State of Minnesota for such an examination. The court, however, granted the motions, entering its order requiring a pretrial psychiatric examination of relator by Dr. Philip K. Artz. Relator's attorneys petitioned for this writ, contending that the district court was without power to issue the order.

The issues involved appear to be whether (1) it is a violation of relator's constitutional right against self-incrimination for the court to order a psychiatric examination against his will, and (2) whether it is within the inherent powers of the district court to order a psychiatric examination to determine criminal responsibility where the statutes of this state are silent as to any procedure concerning it.[1]

---

[1] There is no statute in this state dealing with crimes committed by insane persons which specifically authorizes our courts to direct a psychiatric examination of the accused for the purpose of determining criminal responsibility for his acts.

Minn. St. 609.185 provides in part: "Whoever does * * * the following is guilty of murder in the first degree and shall be sentenced to imprisonment for life:

Research discloses that at least 30 states and the District of Columbia have statutes which authorize pretrial examination of an accused in order to secure independent medical evidence of his responsibility at the time of the crime charged. Where tested, these statutes have been upheld as constitutional; but in these cases defendant had cooperated in the examination and had not asserted the privilege against self-incrimination.[2]

It seems apparent as things now stand that relator's defense will be temporary insanity at the time of the commission of the alleged offenses. Should such a defense be in fact presented, the state in rebuttal will be able to present its own evidence as to his mental condition. Naturally it will have to conduct its own psychiatric examination of relator in order to present such evidence. Thus if the examination is conducted at some point after the trial has begun, there might have to be a recess and a disjointed trial could result.

Even assuming that the trial will go on without disruption, the ques-

"(1) Causes the death of a human being with premeditation and with intent to effect the death of such person or of another."

Minn. St. 631.18 provides: "When any person under indictment or information, and before or during the trial thereon and before verdict is rendered, shall be found to be insane, an idiot, or an imbecile, the court in which such indictment or information is filed shall forthwith commit him to the proper state hospital or asylum for safe-keeping and treatment; and when at such time any such person shall, in addition, be found to have homicidal tendencies, such court shall forthwith commit him to the Minnesota Security Hospital for safekeeping and treatment; and in either case the person shall be received and cared for at the institution to which he is thus committed until he shall recover, when he shall be returned to the court from which he was received to be placed on trial upon such indictment or information."

Minn. St. 610.10 provides: "No person shall be tried, sentenced, or punished for any crime while in a state of idiocy, imbecility, lunacy, or insanity, so as to be incapable of understanding the proceedings or making a defense; but he shall not be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason, from one of these causes, as not to know the nature of his act, or that it was wrong."

[2] See, Danforth, *Death Knell for Pre-Trial Medical Examination? Privilege Against Self-Incrimination*, 19 Rutgers L. Rev. 489, 490, and citations in notes 1 to 6.

tion remains as to the admissibility of statements made to the psychiatrist for the state by relator pertaining to his actions at the time of the crime. It has been suggested that such inculpatory statements of an accused to an examining state psychiatrist be admitted only on the issue of insanity, and that the jury be so instructed. State v. Whitlow, 45 N. J. 3, 210 A. (2d) 763. It is difficult, however, to conceive of a jury not considering such evidence on the issue of guilt, although it might be true that in most cases this type of evidence will be similar to that given by the defendant's own psychiatrist. The fact, nevertheless, remains that if the court orders relator here to submit to a psychiatric examination by the state as to his insanity at the time of the crime (as distinguished from his capacity to stand trial and present a defense) he would be compelled to carry on conversations against his will. In French v. District Court, 153 Colo. 10, 14, 384 P. (2d) 268, 270, the court said:

"A person accused of a crime who enters a plea of not guilty by reason of insanity, cannot be compelled to carry on conversations against his will under the penalty of forfeiture of the defense for failure to respond to questions, or for a refusal to 'co-operate' with persons appointed to examine him. The statute which prescribes the procedures to be followed upon the entry of a plea of not guilty by reason of insanity cannot operate to destroy the constitutional safeguards against self-incrimination."

It is clear, therefore, that the crux of the issue is whether relator can be compelled to submit to such an examination. Most of the cases cited by respondent, with the exception of State v. Whitlow, *supra,* indicate that the examination is proper *if* defendant has consented.

The California court in construing § 1027 of the California Penal Code made it plain that the statute did not require a defendant to submit to examination. Section 1027 provides in part:

"When a defendant pleads not guilty by reason of insanity the court must select and appoint two alienists, at least one of whom must be from the medical staffs of the state hospitals, and may select and appoint three alienists, at least one of whom must be selected from such staffs, to examine the defendant and investigate his sanity. It is the duty of the alien-

ists so selected and appointed to examine the defendant and investigate his sanity, and to testify, whenever summoned, in any proceeding in which the sanity of the defendant is in question."

In People v. Combes, 56 Cal. (2d) 135, 149, 14 Cal. Rptr. 4, 12, 363 P. (2d) 4, 12, the California court discussed this provision, stating:

"Section 1027 of the Penal Code is not unconstitutional. In response to a challenge that section 1027 compelled a defendant to incriminate himself, the court in People v. Strong, 114 Cal. App. 522, said at page 530 [4] [300 P. 84]: 'We fail to see any merit in the contention that under section 1027 a defendant is compelled to be a witness against himself. Nothing in the section compels him to submit to an examination. If he does so the action is purely voluntary. To assert his constitutional rights all that is required is for him to stand mute, and possibly, also, to refuse to permit the examination, when the appointed expert undertakes to proceed; and whether he does so or not there is no compulsion.' "

Other courts also have held that the constitutionality of an order for psychiatric examination of a defendant to determine his criminal responsibility at the time of the commission of a crime hinges upon whether the order compels him to submit to the examination against his will. In Hunt v. State, 248 Ala. 217, 225, 27 So. (2d) 186, 194, the court said:

"But we do not interpret the order of the court to direct the examination of defendant against his will or over his protest. *It does not order him to submit to an examination.* It does not appear that defendant even knew of the order appointing the doctors, or that he made any objection to the examination, or that any force or inducement was used. Therefore the examination was not compulsory theoretically or actually, and, moreover, there was no affirmative act or declaration of defendant offered against him, but only the expert opinion reached by the doctors as the result of their examination." (Italics supplied.)

In State v. Swinburne (Mo.) 324 S. W. (2d) 746, 751, the court thoroughly discussed the issue and again the key factor appeared to be compulsion, or the lack thereof:

"*  *  * We hold that the evidence was admissible upon the broad ground that where a defendant has raised, *or it reasonably appears that he will raise*, a defense of insanity, he waives his privilege under our provisions against self incrimination * * * to the extent that physicians for the State may properly examine him for sanity (and testify) so long, at least, as *no compulsion is used*." (Italics supplied.)

See, also, State v. Myers, 220 S. C. 309, 313, 67 S. E. (2d) 506, 508, 32 A. L. R. (2d) 430, 433.

■ From the foregoing cases it is apparent that although a statute or court order permitting the prosecution to give a psychiatric examination to a defendant is not in and of itself unconstitutional, its application may be unconstitutional if the defendant is compelled to submit to the examination. The question remains whether the courts in this state, where there is no statute authorizing it, may issue an order directing such an examination. It has been suggested in Winn v. United States, 106 App. D. C. 133, 135, 270 F. (2d) 326, 328, that a court does have the inherent power to order a psychiatric examination as to insanity at the time of the crime. There the court said:

"It is true that D. C. Code § 24-301 (Supp. VII, 1959) provides only for an examination limited to trial competency. But nothing in that statute nor anywhere else in the law prevents the court, in a case where it is obvious that the trial will revolve about the issue of the accused's mental state at the time of the crime, from ordering such examinations as will produce the evidence required to determine that issue— *particularly where, as here, the accused is without the financial and intellectual resources to obtain this evidence on his own*." (Italics supplied.)

We are not persuaded to follow the Winn case. The court was apparently influenced by the fact that defendant there was indigent and presumably unable to obtain expert evidence himself concerning his mental condition at the time of the commission of the crime. Moreover, there is nothing to indicate that he was unwilling to submit to a psychiatric examination with respect to his criminal responsibility. The facts in this case are different: Relator has been examined by a psychiatrist of his own choosing, so apparently he is not indigent, and he has vigorously objected

to the order requiring him to submit to an examination by the court-appointed psychiatrist.

We are convinced also that substantial questions as to the nature and scope of such an examination would be best solved by a legislative enactment setting down certain guidelines rather than by the courts on an ad hoc basis. There should be a uniform approach to these questions which we think only the legislative process can give, and there are many problems which the legislature could best resolve in such a statute—for instance, how can the jury be prevented from applying the psychiatrist's testimony to the issue of guilt rather than the issue of insanity? These questions ought to be resolved by the legislative process although it remains clear that the Fifth Amendment of the United States Constitution and Minn. Const. art. 1, § 7, prohibit without question this kind of testimonial compulsion against defendant's will. As was pointed out by the California court, in People v. Combes, *supra,* the defendant may remain silent if he chooses to do so.

Amendment V of the United States Constitution provides that no person shall be compelled in any criminal case to be a witness "against himself" and Minn. Const. art. 1, § 7, makes the same provision. This court in State v. Mason, 152 Minn. 306, 308, 189 N. W. 452, referring to Minn. Const. art. 1, § 7, said:

"* * * The language is unequivocal. Nothing can be detracted from it; nothing added to it. It forbids that a man be compelled to give evidence against himself before a grand jury as well as in court. State v. Froiseth, 16 Minn. 260 (296); State v. Gardner, 88 Minn. 130, 92 N. W. 529. He cannot be compelled to give evidence as to any facts tending to accuse himself of crime or to prove any link in the chain of testimony which is necessary to convict him of a crime."

See, State v. Thaden, 43 Minn. 253, 45 N. W. 447; State v. Drew, 110 Minn. 247, 124 N. W. 1091; State ex rel. Sandquist v. District Court, 144 Minn. 326, 175 N. W. 908; Counselman v. Hitchcock, 142 U. S. 547, 12 S. Ct. 195, 35 L. ed. 1110.

This court in State v. Gardner, 88 Minn. 130, 139, 92 N. W. 529, 533, said:

"* * * The constitutional guaranty is, not that no person shall be compelled to give evidence against himself which is made the basis of an indictment against him, but it is that he shall not be compelled to be a witness against himself. This constitutional guaranty must receive a liberal construction, to the end that personal rights may be protected. * * * Better an occasional miscarriage of justice than that the constitutional rights of the meanest man should be disregarded.

"The constitutional guaranty not only protects a person from being compelled to give direct evidence tending to establish his guilt, but also from giving any circumstance or link in the chain of evidence which may tend to convict him of a crime."

There do not seem to be any reported cases which hold that an accused can be forced to converse with a court-appointed or prosecution expert. See, People v. English, 31 Ill. (2d) 301, 201 N. E. (2d) 455; French v. District Court, *supra*. These cases made it clear that a person accused of a crime who enters a plea of not guilty by reason of insanity cannot be compelled to carry on conversations against his will under the penalty of forfeiture of the defense for failure to respond to questions or for a refusal to "cooperate" with persons appointed to examine him, and that statutes prescribing the procedure to be followed upon entry of a plea of not guilty by reason of insanity cannot operate to destroy the constitutional safeguards against self-incrimination. Apparently, not even the New Jersey court would permit the prosecutor to prove or comment on the defendant's refusal to consent at the trial. State v. Whitlow, *supra*. Such proof or comment would violate his constitutional right against self-incrimination. Griffin v. California, 380 U. S. 609, 85 S. Ct. 1229, 14 L. ed. (2d) 106; Malloy v. Hogan, 378 U. S. 1, 84 S. Ct. 1489, 12 L. ed. (2d) 653.

■ In People v. Scott, 326 Ill. 327, 345, 157 N. E. 247, 255, the Illinois court declared:

"* * * There is no law in this state that authorizes or permits a court * * * to appoint alienists to examine a defendant * * * with a view of qualifying them to testify as the court's witnesses for or against such party as to his mental or physical condition."

Without some statute authorizing such procedure, it would appear that no such action can be taken. In People v. Dickerson, 164 Mich. 148, 154, 129 N. W. 199, 201, 33 L. R. A. (N. S.) 917, 920, the court indicated what would happen if the court's appointment of an expert, pursuant to a Michigan statute, were discovered:

"The expert witnesses provided for by this section testify under a sanction which gives to their testimony practically the same weight as if it were delivered by the court itself * * *."

In Annotation, 32 A. L. R. (2d) 434, 440, reference is made to State v. Hagerty, 152 Minn. 502, 189 N. W. 411, where this court held that although a statute gave the district court authority to commit to an asylum a person under indictment, where found insane and incapable of proceeding with the trial, there was no error in denying the defendant's motion for the appointment of a commission to inquire into his mental condition where the statute prescribed no particular form of procedure.

We conclude that since there are no statutes in this state governing the procedure in cases where the accused pleads insanity as a defense and providing the necessary machinery and guidelines for the protection of the accused from self-incrimination, the courts have no legal basis, without the defendant's consent, for ordering an examination either to determine his mental condition at the time of the alleged criminal acts or to qualify an expert psychiatric witness by virtue of such examination to testify at trial.

For the reasons stated, the writ of prohibition issued herein is made absolute.