## STATE v. ALBERT ALFRED FONTANA.

152 N. W. (2d) 503.

July 28, 1967—No. 39,919.

*Stewart R. Perry,* for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Harlan M. Goulett,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

Defendant was convicted of murder in the second degree, Minn. St. 609.19, following a prosecution for murder in the first degree, § 609.185(1). Insanity was the defense. This appeal seeks reversal and remand for a new trial. It is alleged that the trial court erred in permitting the state to introduce testimony of a state-employed physician as to the mental capacity of defendant. The question presented for review is whether the physician-patient privilege accorded by § 595.02(4) applies between a state-employed physician and a patient committed to a state hospital for treatment and safekeeping.

It is unnecessary to expand upon the facts since it is not denied that defendant shot and killed his wife. It is sufficient only to note that on Easter Sunday morning, March 29, 1964, defendant accosted his estranged wife, Elizabeth, and their two children after church services. He pleaded with her to allow him to return to their home. When his wife refused to be reconciled, defendant drew a gun, saying, "I hate to do this," and killed her. He immediately went to the church rectory and confessed the crime to the pastor, who apparently contacted the police.

Defendant was indicted on the felony charge of murder in the first degree, § 609.185(1), and when no plea was entered on arraignment, it was ordered that he be examined by a board of examiners. § 631.18. The board found defendant to be "in a state of insanity so as to be incapable of understanding the criminal proceedings against him and in cooperating in his defense." He was accordingly committed to the "Asylum for the Dangerously [Insane] (Minnesota Security Hospital) for safekeeping and treatment."

While at this institution defendant was initially examined by Dr. Carl A. Schwartz, who was employed as a psychiatric consultant by the hospital. Dr. Schwartz prescribed medication for defendant. He considered defendant to be his patient and defendant confided to Dr. Schwartz at the time of the initial examination. Defendant was also treated by others at the hospital, and his case was presented for study by the entire staff there. On June 30, 1964, defendant was found to have sufficiently recovered so as to be competent to stand trial. He entered a plea of not guilty on arraignment. His sole defense was insanity. At the trial Dr. Schwartz was called as a witness for the state. Objection to his testimony regarding defendant was made on the grounds of privileged communications. This objection was overruled and Dr. Schwartz was allowed to give his expert opinion as to whether defendant was legally insane at the time of the killing. He testified:

"I believe that Mr. Fontana was aware that he was doing something wrong, knew the nature of the act and that after he had completed it, he realized that he had done something wrong."

■ It is asserted that there was prejudicial error in allowing this testimony. Minn. St. 595.02(4), which accords the privilege upon which defendant relies, provides:

"A licensed physician or surgeon shall not, without the consent of his patient, be allowed to disclose any information or any opinion based thereon which he acquired in attending the patient in a professional capacity, * * * and no oral or written waiver of the privilege hereinbefore created shall have any binding force or effect except that the same be made upon the trial or examination where the evidence is offered or received."

This statute makes no distinction between "public" and "private" physician-patient relationships. Nor does there appear to be any good reason for making such a distinction. The purpose behind the statute is to inspire confidence in patients to make full disclosure of symptoms and conditions to physicians. Such confidence in the physician is deemed necessary to the efficacy of treatment. The law secures the patient's confidence by prohibiting physicians from disclosing secrets which would em-

barrass their patients.[1] Since the patients are the beneficiaries of the statute, it should make no difference whether they are "private" patients or wards of state hospitals. This is especially so in the case of state hospitals for the mentally ill where complete confidence in the attending physicians is sine qua non to the cure. Moreover, it does not seem to us that the state should have to rely on the privileged testimony of a state-employed psychiatrist to prove that patient-defendants were not insane at the moment of their crimes. State-employed psychiatrists are employed by the state not to help in structuring a prosecution but to treat and help rehabilitate the mentally ill.

■ It is the principal contention of the state that defendant affirmatively waived the physician-patient privilege by asserting the defense of insanity at the time of the commission of the offense and by introducing the testimony of four physicians who had examined him or treated him previously. It is unnecessary to review the substance of their testimony. It is sufficient to say that while they expressed their doubts as to his mental capacity, none of them had a definite opinion based upon criteria expressed in the Minnesota M'Naghten rule as found in Minn. St. 611.026.[2] The most meaningful testimony as to defendant's mental condition came from the Reverend Richard McCarthy who talked to defendant immediately after the crime. He testified, "* * * [H]e knew he did it. There was no question about that because he said so." As to whether defendant knew his act was wrong, Father McCarthy testified, "I couldn't positively say, * * * but in my own mind, in my own judgment, this would be a judgmental thing, now, I would have assumed that he knew it was wrong." Since the state was without the benefit of an independent psychiatric examination, it offered the testimony of Dr. Schwartz. In this posture of the proof, the state contends, not without reason, that there is no justification

---

[1] 20 Dunnell, Dig. (3 ed.) § 10314; 58 Am. Jur., Witnesses, § 402; 26 Am. Jur., Homicide, § 567; Opinions Attorney General, No. 88-A-27-D, May 9, 1933, and No. 851-B, May 29, 1943.

[2] "No person shall * * * be excused from criminal liability except upon proof that at the time of committing the alleged criminal act he was laboring under such a defect of reason * * * as not to know the nature of his act, or that it was wrong."

for a rule under which a patient may permit a physician favorable to his case to testify regarding his ailments and then assert a privilege when any other physician who treated him seeks to contradict such testimony.

The uses and abuses of the privilege expressed in § 595.02(4) have been discussed by this court in numerous cases. In civil cases the view has been expressed that the medical privilege should exist as a shield and not as a sword. Nelson v. Ackermann, 249 Minn. 582, 83 N. W. (2d) 500; Snyker v. Snyker, 245 Minn. 405, 72 N. W. (2d) 357. It has been held that the introduction of a physician's testimony by a patient waives the privilege to the extent of permitting the opponent to cross-examine the physician as to any information acquired during the course of treatment. Maas v. Laursen, 219 Minn. 461, 18 N. W. (2d) 233, 158 A. L. R. 215. If a patient, after joint treatment by two or more physicians, introduces the testimony of one of the physicians, most courts find a waiver of the privilege as to the other physicians present during the treatment. Doll v. Scandrett, 201 Minn. 316, 276 N. W. 281. In a criminal case we held that a defendant may impliedly waive the privilege by acquiescing in a routine physical examination where he has been taken into custody as a suspect and he understands that the purpose of the examination is to secure evidence against him at his trial. State v. Emerson, 266 Minn. 217, 223, 123 N. W. (2d) 382, 386.

But it is clear from our decisions that the privilege is not waived by a party who calls medical experts with reference to information acquired by another doctor in attending the patient. In Ostrowski v. Mockridge, 242 Minn. 265, 65 N. W. (2d) 185, 47 A. L. R. (2d) 733, it was contended that the plaintiff had waived the privileged character of her conversations with and treatment by a doctor by submitting testimony as to her disabilities and by furnishing testimony of other medical experts with reference thereto. Relying on Polin v. St. Paul Union Depot Co. 159 Minn. 410, 412, 199 N. W. 87, 88, we pointed out that the legislature has not seen fit to say that such acts shall operate as a waiver:

"* * * This court, in accordance with the weight of authority, has adopted the rule that bringing an action, unless it be against the physician himself for malpractice, or testifying concerning the injuries sustained and the treatment received, unless such testimony relates to

communications made to the physician or questions the propriety of his treatment, is not a waiver of the privilege."

In the Ostrowski case we held that the privilege not only extended to the testimony of the doctor but to the nurse or attendant as well.

It would appear from our decision in State v. Olson, 274 Minn. 225, 143 N. W. (2d) 69, that the privilege has greater force and significance in a criminal case because it has its roots in constitutional derivations. We held there that in the absence of express statutes governing procedure and providing the necessary machinery and guidelines for the protection of the accused from self-incrimination in cases where he pleads insanity as a defense, the courts have no legal basis, without defendant's consent, for ordering an examination either to determine his mental condition at the time of the alleged criminal act or to qualify an expert psychiatric witness by virtue of such examination to testify at trial. See, Minn. St. 609.185, 611.026, 631.18; U. S. Const. Amend. V; Minn. Const. art. 1, § 7.

We consider Taylor v. United States, 95 App. D. C. 373, 222 F. (2d) 398, as the leading authority on this issue. There the issue arose, as it did here, when defendant called one psychiatrist who testified in his favor on the issue of insanity and the court permitted the prosecution to call another government-employed psychiatrist, who had treated defendant, to testify to the contrary. The court there said (95 App. D. C. 376, 222 F. [2d] 401):

"In regard to mental patients, the policy behind such a statute is particularly clear and strong. Many physical ailments might be treated with some degree of effectiveness by a doctor whom the patient did not trust, but a psychiatrist must have his patient's confidence or he cannot help him. 'The psychiatric patient confides more utterly than anyone else in the world. He exposes to the therapist not only what his words directly express; he lays bare his entire self, his dreams, his fantasies, his sins, and his shame. Most patients who undergo psychotherapy know that this is what will be expected of them, and that they cannot get help except on that condition. * * * It would be too much to expect them to do so if they knew that all they say—and all that the psychiatrist learns from

what they say—may be revealed to the whole world from a witness stand.'" Citing Guttmacher & Weihofen, Psychiatry and The Law, p. 272.

The state relies for support on various authorities, the most relevant of which are State v. Sapp, 356 Mo. 705, 203 S. W. (2d) 425; State v. Swinburne (Mo.) 324 S. W. (2d) 746; and Hudman v. State, 89 Okla. Cr. 160, 205 P. (2d) 1175. It is unnecessary to discuss these authorities beyond observing that the conflicting decisions may largely be attributed to a dissimilarity of the various statutory provisions.[3] Our statute is too explicit to allow an interpretation of implied waiver of privilege under the circumstances of this case. The statute clearly provides that the physician shall not disclose any information or any opinion derived from attending the patient in a professional capacity without the consent of the patient. The refusal of defendant to submit to an examination by a psychiatrist, in order to qualify the latter to express an opinion as a witness at the trial, and defendant's consistent objections to such expert opinion evidence completely refute the giving of consent, either express or implied.

■ The state next contends that if the trial court did err in allowing Dr. Schwartz to express his opinion, such error did not prejudice the substantial rights of defendant. It is apparent that, in calling Dr. Schwartz, the able prosecutor sought to present the most reliable and trustworthy evidence,[4] and it may well be that the total impact of the state's proof was such that the jury could have reached the same result without that evidence. While we are reluctant to reverse, particularly under circumstances where, on retrial, a jury would be expected to reach the same result, the fact that defendant has been deprived of due process in denial of a statutory right designed for his protection requires a reversal.

Reversed and remanded for a new trial.

---

[3] 1955 Wash. U. L. Q. 405, 406.

[4] See, Dieden & Gasparich, *Psychiatric Evidence and Full Disclosure in the Criminal Trial*, 52 Calif. L. Rev. 543.