STATE of Minnesota, Respondent,

v.

Richard Oscar ENEBAK, Appellant.

No. 47878.

Supreme Court of Minnesota.

Oct. 6, 1978.

Rehearing Denied Dec. 19, 1978.

Winter & Holten and Mary C. Lauhead, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, John O. Sonsteng, County Atty., Marilyn J. Michales, Asst. County Atty., Hastings, for respondent.

Heard before PETERSON, TODD and GODFREY, JJ., and considered and decided by the court en banc.

TODD, Justice.

Richard Enebak was found to have violated the terms of his probation and his original sentence was imposed. He challenges the procedures relating to his original conviction and also those relating to his probation revocation hearing. We affirm.

Enebak was charged with rape, indecent liberties, and aggravated assault in September 1969. He was committed to the State Hospital at St. Peter by the probate court in January 1970 as a psychopathic personality. With his consent, the criminal charges were transferred to the inactive trial calendar. In December 1974, Enebak entered a negotiated plea of guilty to indecent liberties and was sentenced to a term of 0 to 10 years and placed on probation. One of the conditions of probation was that he remain at St. Peter State Hospital until discharged.

Enebak was allowed unsupervised leaves from the hospital. On June 11, 1976, he was observed by a policeman, who personally knew him, picking up a prostitute in St. Paul. This was reported to Enebak's probation officer. The probation officer prepared and served Enebak with a written notice of violation of probation, setting forth as grounds "YOUR ENGAGING IN ILLEGAL ACTIVITIES WITH A KNOWN PROSTITUTE." A statement taken by police from the prostitute was furnished to Enebak. The statement disclosed that no sexual activity had occurred, but that Enebak had made proposals to the prostitute, suggesting certain deviate sexual practices, which she declined to perform.

At the original appearance in court, the state moved for revocation of probation, stating that it could produce witnesses to establish that Enebak had in fact been in violation of the law and also that he had

failed to meaningfully cooperate with treatment at St. Peter State Hospital. A hearing was scheduled. At the hearing, the state produced testimony from the prostitute, the police officer who saw Enebak pick her up, and the probation officers involved in his case. The state also introduced testimony of Dr. Charles G. Sheppard, the medical director of St. Peter State Hospital, who recommended that Enebak be transferred from St. Peter to a correctional institution because Enebak was a threat to public safety and further treatment at St. Peter would not be effective. Enebak's attorney objected to the testimony of Dr. Sheppard as being within the scope of medical privilege. The court entered its order, finding that Enebak had engaged in conduct similar to that originally charged and to which he had entered a guilty plea. The court also found that he failed to participate and cooperate in the treatment program scheduled for him at the state hospital. As a result, the court revoked his probation, reinstated the original sentence, and gave Enebak credit for the time he had served at St. Peter from the date of the imposition of the sentence. The court declined to give Enebak credit for the time he had been confined at St. Peter between January 1970 and December 1974.

The issues raised are:

(1) Was Enebak's guilty plea and sentence invalid as a denial of his right to a speedy trial?

(2) Did Enebak receive adequate notice as to the basis of the revocation of his probation?

(3) Was the order of revocation supported by the evidence?

(4) Is Enebak entitled to credit for time served in a state hospital under civil commitment prior to pleading guilty to criminal charges?

(5) Did the trial court have authority to sentence Enebak to the custody of the commissioner of corrections?

■ 1. We find no merit to Enebak's claim that he was denied the right to a speedy trial. Although approximately 5 years elapsed between his arrest and the entry of his guilty plea, the record compels a finding that he agreed to the delay. He acquiesced in, or did not object to, the decision to place his case on the inactive calendar in 1970. At no time during the 5-year period did he demand a trial. Nor did he raise any objections to the delay when he entered his plea. We must infer that he had no wish to be tried and sought to resolve the pending charges only when it became apparent that they were depriving him of certain privileges at St. Peter. Moreover, we can discern no actual prejudice resulting from the delay. Thus, while we do not approve the state's failure to take this case to trial, we must conclude that Enebak was not denied his right to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

■ 2. The written notice of probation violation prepared by Enebak's probation officer was less than adequate. If it had constituted the only notice Enebak received, we would be inclined to remand this case. Nevertheless, the record establishes that Enebak received actual notice of the specific grounds that would be urged as the basis for revocation. He was furnished a copy of the prostitute's statement to the police and was informed at the initial revocation hearing that his failure to cooperate in the treatment program at St. Peter would also be asserted as a ground for revocation. This notice was adequate to permit Enebak to prepare to refute the allegations. He presented no witnesses, however, and there is no indication in the record that his defense was in any way prejudiced by the inadequacy of the written notice.

We note that where the state is aware that matters not contained in the original violation notice are to be raised at a revocation hearing, better practice dictates that it serve an amended written notice on the defendant rather than orally state the amendments on the record at the initial hearing. Nevertheless, we are satisfied that the furnishing of the prostitute's statement to Enebak and the statement of the

prosecutor that the state would offer evidence of Enebak's failure to cooperate with the St. Peter treatment program were sufficient to meet the minimum due process standard of fundamental fairness. *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

3. We are satisfied that the record contains sufficient evidence to sustain the revocation order. Enebak argues, however, that Dr. Sheppard's testimony at the revocation hearing was based on information obtained in the course of the latter's physician-patient relationship with Enebak. Such testimony is asserted to be violative of the medical privilege under this court's decision in *State v. Fontana,* 277 Minn. 286, 152 N.W.2d 503 (1967). There we held that the statute which excludes physician-patient communications from evidence does not distinguish between private- and state-employed doctors. We observe, however, that the medical privilege is a statutory creation and not a constitutional right. The legislature which created the rule also possesses the power to create exceptions to the rule, and this case falls within one such exception.

Enebak was formally committed to the St. Peter State Hospital in 1970. The transfer of his criminal charges to the inactive calendar was made with his full consent. As such, Enebak's treatment at the state hospital came within the provisions of Minn.St. c. 253A. Section 253A.21, subd. 2, provides in part that—

"* * * Any medical privilege otherwise existing between patient and physician is waived as to any physician who provides information with respect to a patient pursuant to any provision of this chapter."

We conclude that Dr. Sheppard's testimony was properly admitted under this language and note that in the absence of this provision, there would be no opportunity for a court to meaningfully review the effectiveness of a patient's treatment program following a formal commitment to a state mental institution.

4. We find no merit in Enebak's contention that he is entitled to credit for the time spent at St. Peter prior to the entry of his plea. He was committed to the security hospital pursuant to Minn.St. c. 526. This commitment was not criminal in nature. *State ex rel. Pearson v. Probate Court,* 205 Minn. 545, 287 N.W. 297 (1939), affirmed, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744 (1940). See, *Specht v. Patterson,* 386 U.S. 605, 610, n. 3, 87 S.Ct. 1209, 1212, 18 L.Ed.2d 326, 330 (1967). It is well established that the prohibition against double jeopardy does not preclude separate civil and criminal proceedings based on the same incident. See, e. g., *Yates v. United States,* 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957); *United States ex rel. Marcus v. Hess,* 317 U.S. 537, 63 S.Ct. 379, 81 L.Ed. 443 (1943).

5. Lastly, we are concerned with the propriety of the trial court's sentencing Enebak to the custody of the commissioner of corrections. Appellant contends that the court was required to return him to the security hospital. The court's action, however, was mandated by Minn.St. 609.105. The commissioner of corrections, having gained custody, should have returned Enebak to the custody of the commissioner of public welfare, who could have conducted the hearing required by Minn.St. 253A.14, subd. 2, to determine if Enebak should be transferred from the security hospital. We assume that this error will be corrected by the appropriate administrative officials without further judicial action.

We have considered the other issues raised by appellant and find them to be without merit.

The decision of the trial court is affirmed.

Affirmed.

WAHL, Justice (concurring specially).

I concur with the majority opinion insofar as it holds that the defendant was not denied a speedy trial or placed in double jeopardy and that the court's sentence upon revocation of probation was proper. I cannot, however, agree that the defendant re-

ceived adequate notice of the grounds for revocation.

The notice of revocation given to the defendant stated that revocation was being recommended because of his "engaging in illegal activities with a known prostitute." There is nothing in the record, however, that establishes the illegality of defendant's activities. Only in its brief on appeal does the state contend that the solicitation of a prostitute constitutes a violation of a municipal ordinance. Neither the defendant nor the trial court was given notice that the state was urging violation of this ordinance as a ground for revocation. Since the court did not find that the defendant had engaged in "illegal activities," the sole ground of which defendant was given written notice fails as a basis of revocation.

Minn.St. 609.14, subd. 1, provides that the court may revoke probation "[w]hen it appears that the defendant has violated any of the conditions of his probation or has otherwise been guilty of misconduct which warrants the imposing or execution of sentence * * *." Subdivision 2 requires that the defendant "be notified in writing and in such manner as the court directs of the grounds alleged to exist for revocation of the stay of imposition or execution of sentence." Subdivision 4 provides that "[i]f none of *such grounds* are found to exist, the defendant *shall* be restored to his liberty under the previous order of the court." (Italics supplied.)

While the trial court is vested with discretion to determine the sufficiency of the evidence in a proceeding to revoke probation, *State ex rel. Halverson v. Young,* 278 Minn. 381, 154 N.W.2d 699 (1967), the statute permits revocation only where the evidence supports the grounds alleged to exist in the notice given to the defendant. Here, there was no evidence to support the allegation that the defendant had engaged in "illegal activities."

The court stated that the defendant's probation was revoked because he engaged in "conduct similar to that originally charged and to which he entered a guilty plea" and because he failed to "participate and cooperate in the treatment program scheduled on his behalf at the St. Peter State Hospital." The record, however, contains no evidence that the defendant was notified that his engaging in "conduct similar to that originally charged" would be asserted as a ground for revocation. The clear meaning of Minn.St. 609.14 precludes this court from affirming the revocation order on this ground.

The majority holds, however, that the defendant received sufficient notice that his failure to cooperate in treatment would be asserted as a ground for revocation. This holding not only is contrary to the clear statutory requirement that written notice be given, but it also encourages the use of such unprofessional procedures as appear in this case. I would, therefore, hold that the notice given to the defendant was insufficient but since the record does not establish that the defendant was prejudiced by the state's failure to give proper notice I would not reverse on this ground alone.