**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jess Harlan WHITE,**
**Defendant-Appellant.**

**No. 79–5364**
**Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

May 27, 1980.

---

\* Fed.R.App.P. 34(a); 5th Cir. R. 18.

John R. Martin, Atlanta, Ga., for defendant-appellant.

C. Michael Abbott, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before RONEY, KRAVITCH and TATE, Circuit Judges.

RONEY, Circuit Judge:

Defendant was convicted of kidnapping and using a firearm to commit a felony, 18 U.S.C.A. §§ 924(c)(1), and 1201. On appeal he contends that the district court erred in instructing the jury and in admitting the following evidence: his confession, evidence obtained in the search of his van, identification evidence resulting from a pretrial lineup, and testimony of the Government's psychiatrist. Finding no error in the district court proceeding, we affirm.

On the night of September 2, 1978, defendant and an accomplice picked up the victim, her husband and her three-year old child, who were hitchhiking on Interstate 285 near Atlanta. After the passengers had fallen asleep, defendant stopped the van and forced the victim's husband and child to get out at gunpoint. The two men then drove the van to a country barn where the victim was sexually assaulted. Eventually the victim was taken to Tennessee where she was let out on a country road. White's accomplice, Robert Webb, was convicted on similar charges in a separate trial and his appeal is presently pending. *See United States v. Webb*, No. 79-5390, 5th Cir., filed Sept. 12, 1979.

*Defendant's Confession*

Defendant challenges the admission into evidence of a confession on three theories: *first*, it violated his right to counsel, *second*, he was mentally incapable of voluntarily waiving his right to counsel, and *third*, the confession was made pursuant to plea bargain.

On February 19, 1979, defendant called FBI authorities, stating that he was responsible for the kidnapping and insisting that he be allowed to turn himself in. Shortly thereafter, he was picked up by two FBI agents who took him to the Atlanta FBI office. Advised of his rights, defendant stated that he understood them, then signed the advice of rights form, which contained a waiver of right to counsel.

After signing the form, White asked if any disadvantage would accrue to him if he agreed to be interviewed in the absence of counsel. The agents responded that if he had any question in his mind, he should say no more until he discussed the matter with counsel, because that is the advice he would probably be given by counsel. Defendant then replied, "Well, I guess there is some benefit in cooperating." To this the agents responded that they could make no promises, but that his cooperation would be made known to the prosecuting attorneys and to any sentencing judge. The interview then proceeded, during which the defendant gave a complete confession. This confession was introduced at trial over defendant's objection.

The record unequivocally supports the district court's findings that defendant had intelligently and knowingly waived his right to counsel. Defendant had approached the FBI, insisted upon talking to them, did not appear to be under the influence of drugs or alcohol or to be tired at the time he made his confession, and was not restrained in any way.

Defendant suggests that he was mentally incapable of voluntarily waiving his right to counsel. While he did state during a later interview with another FBI agent that he must be "crazy as nine bedbugs," and while his psychiatrist gave the opinion that defendant had a "borderline personality," that same psychiatrist testified that defendant had an I.Q. of at least 130, and had three years of college education. Another psychiatrist testified defendant was under no mental disability at the time of his confession.

In *North Carolina v. Butler*, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286, 293 (1979), the Supreme Court reaffirmed the principle that the question of waiver of counsel must be determined by the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the defendant. The evidence was sufficient to support the district court's decision on this point.

Relying on his statement about the benefits of cooperating and the FBI agent's statement that he would make that cooperation known to the prosecutor and judge,

defendant contends that his confession was made pursuant to plea bargaining and is therefore inadmissible under Fed.R.Crim.P. 11(e)(6).

In *United States v. Robertson*, 582 F.2d 1356 (5th Cir.1978), this Court *en banc* discussed extensively the difference between plea bargaining contemplated by the rule and the kind of "discussions" which are not rendered inadmissible in evidence under the rule. We held that the totality of the circumstances should be considered in determining whether a discussion should be characterized as a plea negotiation, and that each case must turn on its own facts. On the facts of this case, it is apparent the parties were, at most, involved in "cooperation" negotiations. Confessions made pursuant to such discussions are not inadmissible as plea bargains. *United States v. Watson*, 591 F.2d 1058 (5th Cir.), *cert. denied*, 441 U.S. 965, 99 S.Ct. 2414, 60 L.Ed.2d 1070 (1979).

*Search of Defendant's Van*

During the interview at the FBI office, defendant told the agents that his 1975 Chevrolet van was the vehicle used during the commission of the crime. The agent requested permission to search the vehicle, at the same time informing defendant of his right to refuse to allow the search, and explaining that if he did not consent, the agent could not automatically get a search warrant but would have to show probable cause to a magistrate. Defendant then read and signed a form consenting to the search. The vehicle was not searched until two days later, and it was searched by FBI agents other than those named in the consent form. Certain items of evidence were seized in the search and admitted into evidence, over objection.

■ Defendant contends that the agent's reference to the possibility of obtaining a search warrant was sufficient to negate voluntariness, citing as support certain language from *United States v. Boukater*, 409 F.2d 537 (5th Cir.1969). There the Court in dicta indicated that a search consent might not be voluntary if the agent either said or implied that defendant might as well con-

sent because a warrant could be quickly obtained if he refused.

We need not speculate on whether such a situation would turn on the truth of the representation. *See United States v. Savage*, 459 F.2d 60 (5th Cir.1972), *vacated on other grounds and reaffirmed*, 483 F.2d 67 (1973), *cert. denied*, 415 U.S. 949, 94 S.Ct. 1470, 39 L.Ed.2d 564 (1974). The facts of this case do not fit that hypothesis. The FBI agent did not say or imply that defendant may as well consent because a warrant could be easily obtained. Whether defendant's consent to the search of his van was voluntary is a question of fact to be determined from the totality of all the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). The district court was not clearly erroneous in finding defendant had voluntarily consented to a search of the van.

■ Defendant contends the evidence should have been suppressed because of the two day delay in the search of the van, and because the search was conducted by agents other than those named in the consent form. While it is true that a consent may limit the extent or scope of a warrantless search, *Mason v. Pulliam*, 557 F.2d 426 (5th Cir.1977), the alleged defects in the search here are not related to the scope of the search. There is no indication that defendant attempted to withdraw his consent prior to the search or that he was in any way prejudiced by the delay or the search by other agents. *See id.* at 429; *United States v. Bradley*, 428 F.2d 1013 (5th Cir.1970).

Defendant's motion to suppress the evidence obtained from his motor vehicle was properly denied.

*In-Court Identification*

■ Prior to trial, a lineup was held at which defendant's counsel was present. After the victim and her husband had viewed the lineup, each was individually interviewed. Counsel for defendant was excluded from these interviews but was given an opportunity afterwards to question each witness. Defendant's counsel had

also requested the initial interview between the witnesses and the Government be tape recorded, but that request was denied. Over defendant's objection the witnesses each subsequently identified defendant in court. Defendant claims that the in-court identification was tainted by the failure to allow counsel to attend or tape record the post-lineup interview and should have been excluded.

The point is controlled by *United States v. Banks*, 485 F.2d 545 (5th Cir.1973), *cert. denied*, 416 U.S. 987, 94 S.Ct. 2391, 40 L.Ed.2d 764 (1974). There we held that where the witnesses were not prohibited from talking with counsel immediately after the interviews and where there was adequate opportunity at trial for the witnesses to be cross-examined concerning the lineup and interview, it was not error for the district court to admit the in-court identification.

*Testimony of Psychiatrist*

■■■ One of defendant's theories of defense was that he was insane at the time of the crime. Defense counsel approached an Atlanta psychiatrist, Dr. Davis, about rendering a second opinion on defendant's mental condition. Defense counsel stated in a hearing before the district court that he had revealed to Dr. Davis the opinion of another psychiatrist and counsel's theories about the insanity defense, as well as a general background of the case. Dr. Davis neither examined defendant nor was asked to give an opinion.

Without knowledge of this conversation, the Government also approached Dr. Davis about examining defendant. Upon learning of this, defense counsel strenuously objected. The district court conducted a hearing on Dr. Davis' qualification to be a Government witness, and also met with defense counsel *in camera* to discuss the original conversation with Dr. Davis. The court found that defense counsel had not hired Dr. Davis but had only "sounded him out" on the possibility of employment, that Dr. Davis had been told nothing that would disqualify him from testifying, and that Dr. Davis would not be affected by who em-

ployed him. Dr. Davis was thereupon hired by the Government.

In a bifurcated trial, Dr. Davis testified on behalf of the Government. Defendant contends that this was error because it violated his attorney-client privilege and thereby interfered with his right to effective assistance of counsel. Defendant would thus have us extend the attorney-client privilege to a situation where the psychiatrist was approached for employment but never hired and where the statements made to him were by the attorney and not the client. Defendant cites as authority for this proposition *United States v. Alvarez*, 519 F.2d 1036 (3d Cir.1975), and *Edney v. Smith*, 425 F.Supp. 1038 (E.D.N.Y. 1976), *aff'd*, 556 F.2d 556 (2d Cir.1977). Both those cases involved a psychiatrist employed by the defense who was required to testify with respect to statements made by the defendant.

The attorney-client privilege prohibits the disclosure of the substance of communications made in confidence by a client to his attorney for the purpose of obtaining legal advice. *United States v. Pipkins*, 528 F.2d 559, 562 (5th Cir.), *cert. denied*, 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *Clanton v. United States*, 488 F.2d 1069, 1071 (5th Cir.), *cert. denied*, 419 U.S. 877, 95 S.Ct. 140, 42 L.Ed.2d 116 (1974). It has also been recognized that "[i]n appropriate circumstances the privilege may bar disclosures made by a client to non-lawyers who . . . ha[ve] been employed as agents of an attorney." *United States v. Pipkins*, 528 F.2d at 562; *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961); 8 Wigmore, Evidence § 2301 (McNaughton rev. 1961). In this case the court found that no damaging disclosure had been made, that the disclosure was not made by the client, and that the non-lawyer was never employed as an agent of the attorney. The admission of Dr. Davis' testimony at the insanity portion of the trial was therefore not erroneous.

*Jury Charge on Assault*

■■■ Defendant was charged with kidnapping for the purpose of sexual assault. In its closing charge, the district court gave

the definitions for both assault and sexual assault, and then twice instructed the jurors that unless they found the purpose of the kidnapping was a sexual assault, they must acquit defendant. Defendant objected to the charge on the ground that giving the definition of assault was misleading and prejudicial because assault requires only a threat or attempt while sexual assault requires physical contact.

A trial court is given broad discretion in giving jury instructions and will not be reversed as long as the charge given correctly states the substance of the law. *United States v. L'Hoste*, 609 F.2d 796 (5th Cir.1980). The charge correctly stated the substance of the law. Accordingly, we find no reversible error.

Defendant's conviction is therefore AFFIRMED.