**STATE of Minnesota, Respondent,**

v.

**John DODIS, Appellant.**

**No. 50394.**

Supreme Court of Minnesota.

Jan. 15, 1982.

C. Paul Jones, Public Defender, and Robert D. Goodell, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Tom Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

SCOTT, Justice.

Defendant John Dodis was convicted of murder in the second degree for the death on September 15, 1977, of George Paladie. A jury in Ramsey County District Court, in a bifurcated trial pursuant to the provisions of Minn.R.Crim.P. 20.02, subd. 6(5), found the elements of the offense of second-degree murder proved beyond a reasonable doubt, then rejected his mental illness defense.

Defendant challenges the sufficiency of the evidence and a number of trial court rulings. The primary issue raised by the appeal is whether a psychiatrist whose appointment was requested by defendant's attorney to ascertain the existence of the mental illness defense can be called by the state as a witness when the defense chooses not to use that psychiatrist's testimony.

Defendant and George Paladie were immigrants from the same town in Rumania. Defendant's family had been active in the anti-Communist movement in Rumania, while Paladie's son was a member of the Communist Party. Defendant escaped to Italy in 1975, emigrated to the United States in 1976 and claims to have been continuously persecuted by the Rumanian secret police, even in this country. In April 1977, defendant came to the Twin Cities to work. He became acquainted with Paladie, a heavy-drinking man who owned various guns. Both men were engaged in efforts to bring their children to the United States, and each was suspicious that the efforts of the other were preventing his own children from being granted admittance.

Defendant was staying in Paladie's Roseville home on September 15, 1977, when the offense for which defendant was convicted occurred. Paladie's body, wrapped in sheets and with two gunshot wounds in the head, was recovered from the St. Croix River on September 20, 1977. Defendant does not deny that he caused Paladie's death but argues, in the court below and in this court, that he acted in self-defense or in the heat of passion provoked by Paladie's threatening him with a gun and forcing him to commit humiliating acts, or that he was not guilty by reason of mental illness.

Defendant was arrested in Chicago, Illinois, on October 4, 1977. On October 5 and 6, 1977, he gave the following account of the incident to Detective Berglund. Defendant and Paladie had been drinking heavily on the morning of September 15 in Paladie's home. Paladie had threatened defendant with a .38 caliber revolver because defendant did not like Paladie's son. When Paladie was not looking, defendant had pocketed a .25 caliber revolver Paladie had left on a shelf. He could see Paladie in a mirror on the den wall as Paladie lay on a bed in the den. When Paladie threatened him again he turned quickly in the doorway, which was eight feet from the bed, and shot Paladie twice in the head. Defendant panicked when he discovered the gun Paladie was holding was "broken" and concluded that he was in trouble. After wrapping Paladie's body in bedding and turning over the bloodstained mattress, defendant put the body in the trunk of Paladie's Cadillac, took Paladie's wallet, keys and car, and went to his friend, Phillip Moise, in Newport to discuss his problem. Moise refused to help, so, after driving around for some time, defendant dumped the body in the St. Croix River north of Taylors Falls and fled to Chicago.

Defendant was indicted for murder in the first and second degree on October 12, 1977, and was arraigned and entered a not guilty plea on November 10, 1977. He entered a plea of guilty on January 13, 1978, but withdrew that plea on March 15, 1978, because he wished to raise the defenses of mental illness and self-defense. The court ordered a psychiatric examination for purposes of determining defendant's competency to proceed to trial and evaluating his mental condition at the time of the shooting. In addition to appointing its own expert, the court also permitted in its order that either the defendant or the state might retain a qualified psychiatrist or psychologist to observe the examination of the

court-appointed psychiatrist and to conduct a separate examination of the defendant. One of the experts retained by defendant was Dr. Dennis Philander, who concluded, as did the court-appointed psychiatrist, Dr. Charles McCafferty, that defendant was not competent to stand trial. This conclusion was accepted at the competency hearing on May 1–2, 1978, and civil commitment proceedings were begun in Ramsey County Probate Court. Defendant was transferred to the Minnesota Security Hospital at St. Peter for evaluation on May 10, 1978. Following that evaluation, the probate court determined on July 26, 1978, that the defendant was neither mentally ill nor in need of civil commitment. Dr. Philander reexamined the defendant at the request of defense counsel on September 26, 1978, in preparation for trial. Defense counsel determined not to raise the defense of mental illness at trial.

The first jury trial, begun October 23, 1978, ended in a mistrial on October 26, 1978, because of publicity about the withdrawn plea. New counsel was substituted before the second jury trial began on April 11, 1979. This attorney again raised the defense of not guilty by reason of mental illness and requested Dr. Philander to reexamine the defendant on the eve of the mental illness stage of the trial. The defense attorney determined not to call Dr. Philander as a witness and did not put Philander's name on the witness list required of defendants by Minn.R.Crim.P. 9.02, subd. 1(3)(a).

During the mental illness portion of the trial, the prosecution, over defense objection, was permitted to call the defense psychiatrist, Dr. Philander, as a witness for the state. The state also called Dr. McCafferty, the court-appointed psychiatrist. The defendant presented no expert testimony. In closing argument, the prosecutor repeatedly called attention to the fact that the state had produced two psychiatrists and that the defendant had produced nothing but his

own testimony. The jury rejected the mental illness defense and, on May 2, 1979, defendant was sentenced to a term of 0 to 40 years. This appeal followed.

The appeal raises the following issues:

(1) Was the evidence sufficient to prove beyond a reasonable doubt that defendant's killing of George Paladie was murder in the second degree and not in self-defense or in the heat of passion?

(2) Did the trial court err in refusing to give the jury defendant's requested instruction on self-defense or in failing to clarify the burden of proof on the mental illness defense?

(3) Can the state call as a witness a psychiatrist whose appointment was requested by defendant's attorney to ascertain the existence of the mental illness defense, when the defense chooses not to use that psychiatrist's testimony, without violating defendant's attorney-client privilege or right to effective assistance of counsel?

(4) Do the Minnesota Rules of Criminal Procedure prohibit an alternate juror, who did not deliberate in the determination of guilt portion of the trial, from replacing a juror dismissed prior to the mental illness portion of the trial?

(5) Did the trial court err in failing to take immediate action upon receiving a note from a juror saying she wanted to go home and in denying defendant's motion for a mistrial?

(6) Was defendant denied effective assistance of counsel when his attorney did not request a *Schwartz* hearing?

1. We consider first whether the evidence was sufficient to prove beyond a reasonable doubt that defendant's killing of George Paladie was murder in the second degree. The court submitted to the jury instructions on murder in the first degree,[1] murder in the second degree,[2] and manslaughter in the first degree.[3] The court also instructed on self-defense and intoxication. The jury found the defendant guilty

---

1. Minn.Stat. § 609.185 (1980).

2. *Id.* § 609.19.

3. *Id.* § 609.20(1).

of murder in the second degree. Defendant argues that as a matter of law the evidence proved him guilty only of manslaughter in the first degree and, further, that the state failed to prove beyond a reasonable doubt that he did not act in self-defense.

The rules governing the scope of this court's review of the sufficiency of the evidence are well settled. We must look at the evidence in the light most favorable to the verdict for the state, acknowledging that the credibility of the witnesses is for the jury. *State v. Collins*, 276 Minn. 459, 469, 150 N.W.2d 850, 857–58 (1967), *cert. denied*, 390 U.S. 960, 88 S.Ct. 1058, 19 L.Ed.2d 1156 (1968). If the jury, acting with due regard to the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude from the evidence contained in the record that the defendant was guilty of the offense charged, we will not disturb its verdict. *State v. Collins*, 276 Minn. at 470, 150 N.W.2d at 858; *State v. Thompson*, 273 Minn. 1, 36, 139 N.W.2d 490, 515, *cert. denied*, 385 U.S. 817, 87 S.Ct. 39, 17 L.Ed.2d 56 (1966).

From the evidence contained in the record in this case, the jury could reasonably have concluded that defendant shot Paladie twice in the head at close range, one shot a contact wound two inches behind the left ear, not knowing whether Paladie was asleep or awake. Defendant told his friend, Phillip Moise, that he had done something bad and asked Moise's help in disposing of the body. Defendant admitted disposing of Paladie's body in the St. Croix River, forging Paladie's checks, stealing his Cadillac automobile and the cash from his wallet, and fleeing to Chicago.

Defendant's testimony that both he and Paladie were drinking heavily before the shooting was contradicted by the testimony of the state's expert that Paladie's blood contained no alcohol at the time of this death and by Moise's statement that defendant appeared sober shortly after the killing.

Defendant contends that he intentionally killed Paladie "in the heat of passion provoked by such words or acts of another as would provoke a person of ordinary self-control under like circumstances." Minn.Stat. § 609.20(1) (1980). He testified at trial that Paladie, after drinking and quarreling, forced defendant to sit near him and commit sodomy on him, telling him that the act would be repeated. The jury, rather than believing this testimony, apparently inferred that defendant changed his testimony at trial from the version of the shooting he had first given to the police in order to conform it to the physical findings of the medical examiner that the shots were fired not from a doorway eight feet away but from the distances of three feet and two inches. The state's evidence also showed that it would have been impossible for the defendant, standing in the doorway, to have seen Paladie lying on the bed by looking in the mirror on the wall of the den.

Defendant also argues that the state failed to prove beyond a reasonable doubt that he did not kill Paladie in self-defense. Defendant had the initial burden of establishing that he had done the killing in the belief that it was necessary to avert death or great bodily harm, that his judgment as to the gravity of the peril to which he was exposed was reasonable under the circumstances, and that his election to defend himself was such as a reasonable person would have made in light of the danger to be apprehended and the methods by which the danger could have been avoided. Minn. Stat. § 609.065 (1980); *State v. Boyce*, 284 Minn. 242, 254, 170 N.W.2d 104, 112 (1969). It is for the jury to determine whether the defendant has submitted sufficient evidence to create a reasonable doubt of defendant's guilt because of the excuse and whether the state has overcome that doubt. We find the evidence sufficient to prove beyond a reasonable doubt that defendant killed George Paladie intentionally, without justification or heat of passion.

2. Defendant contends that the trial court erred in refusing to give the jury his requested instruction on self-defense and in failing to clarify the burden of proof on the

mental illness defense. The proposed instruction on self-defense read, in relevant part:

Defense requests that in the body of the Self-Defense Instruction the Court state that the use of deadly force is justified when the defendant believes that it is necessary to avert death, great bodily harm or other serious felony being committed upon him. The jury is instructed that forcing a person to perform oral sex upon them is a serious felony and the use of deadly force is authorized to prevent the commission of this crime upon defendant if all the other requirements of self defense are met.

The trial court declined to give the requested instruction except as given in substance in the court's instruction on self-defense, as follows:

With respect to the issue of self defense, no crime was committed if defendant took the life of George Paladie even intentionally, if defendant's action was taken in resisting or preventing an offense which he reasonably believed exposed him to death or great bodily harm, but in order for the killing to be justified for this reason, three conditions must be met. First, the killing must have been done in the belief that it was necessary to avert death or great bodily harm. Second, the judgment of defendant as to the gravity of the peril to which he was exposed, must have been reasonable under the circumstances. Third, defendant's election to kill must have been such as a reasonable man would have made in the light of the danger to be apprehended and the existence of any alternative way of avoiding the peril.

■ The requested instruction approving the use of deadly force to prevent a felony which is not life-threatening is improper. Self-defense is justified when belief of death or great bodily harm is reasonable and the force used is that which is reasonable to prevent such harm. Minn.Stat. § 609.065 (1980). Defendant clearly could have perceived the aimed gun and verbal threats as life-threatening. Such actions were covered by the instruction as given by the court. The general instruction on self-defense covered the substance of the portion of the desired charge which was proper.

■ Defendant asserts that the court erred by failing to clarify the burden of proof on the mental illness defense when the jury asked the following question: "Does the defense have to prove all the elements of mental illness, or is the proof of one or two elements enough to base a verdict on? We also need clarification of the phrase 'morally wrong' as used in your instructions." The court answered the question by rereading the instruction it had given earlier:

Under the statutes of Minnesota, a person is not criminally liable for an act when, because of a defect of reason caused by mental illness, he did not know the nature of his act, or he did not know that it was wrong. The elements of the defense of mental illness in this case are, first, the defendant, to be criminally liable, must have known the nature of his act. This means, simply, he must have understood what he was doing. If, because of a defect of reason, caused by a mental illness, defendant did not know what action he was taking or what the consequences of his action would be, then he did not know the nature of his act.

Secondly, even if defendant knew the nature of his act, he must have understood that his act was wrong. The word, "wrong" in the instruction, is used in the moral sense and does not simply refer to a violation of statute. Stated another way, even if defendant realized that his act violated the law, he is not criminally liable if, because of a defect of reason caused by a mental illness, he did not understand that his act was morally wrong.

Third, such failure of the defendant to know the nature of his act or that it was morally wrong, or that it was wrong, must have been the result of a defect of reason caused by mental illness.

The burden of proof is on the defendant to prove this defense by the greater weight of the evidence. This means he must prove to you that it is more likely true than not true that because of a defect of reason caused by a mental illness, he did not know the nature of his act or did not know that it was wrong. If you now find that defendant has proved by the greater weight of the evidence that he did not know the nature of his act or that he did not know that it was wrong, defendant is not guilty by reason of mental illness.

In Minnesota, the burden of proof is on the defendant to establish the defense of mental illness by a preponderance of the evidence. *State v. Malley*, 285 N.W.2d 469, 472 n.3 (Minn.1979). If it appears that the defendant does not understand *either* the nature and quality of his act *or* that what he did was wrong, he is not guilty by reason of mental illness. *State v. Rawland*, 294 Minn. 17, 42–47, 199 N.W.2d 774, 788–90 (1972). In determining the question of legal insanity, we do not believe the ordinary juror would have difficulty in understanding, from the court's instruction, that the jury must find both that defendant knew the nature of his act and that he knew it was wrong. We find no error in the court's repeating that instruction as a means of answering the jury's question.

3. We come now to the issue of whether a psychiatrist whose appointment was requested by defendant's attorney to ascertain the existence of the mental illness defense can be called by the state as a witness when the defense chooses not to use that psychiatrist's testimony.

The Ramsey County District Court, on April 14, 1978, ordered a psychiatric examination of the defendant for the court pursuant to Minn.R.Crim.P. 20.01, subd. 2(3), and Rule 20.02, subd. 2, for the purpose of determining defendant's competency to stand trial and to evaluate defendant's mental condition at the time of the shooting. Minn.R. Crim.P. 20.02, subd. 7. The order not only provided for the appointment of a psychiatrist for the court but also provided that:

[E]ither the defendant or the State may retain a qualified psychiatrist or clinical psychologist or physician experienced in the field of mental illness and it is further directed that such psychiatrists, psychologists, or physicians be permitted to observe the examinations of the defendant by the above-designated qualified medical personnel and to conduct their own examinations of the defendant.[4]

The defendant retained Dr. Dennis Philander, who examined defendant and determined initially that he was incompetent to proceed to trial. Dr. Philander reexamined defendant on September 26, 1978, and on April 23, 1979, at the request of defense counsel. The defense of mental illness was raised and litigated at the second part of the bifurcated proceedings. When defense counsel decided not to call Dr. Philander at the mental illness portion of that trial, the prosecution called him and, over defense objection, was permitted to examine him as a witness for the state.

Whether the prosecution may call a defense-retained psychiatrist in this case depends upon whether such a procedure violates the defendant's attorney-client privilege or his constitutional right to the effective assistance of counsel. We do not find that any privilege is, or that any constitutional rights are, violated by permitting the prosecution to call a psychiatrist in trials such as the one in the instant case. Instead, we find that the Minnesota Rules of Criminal Procedure allow the prosecution to call a defense-retained psychiatrist.

Minnesota adopted reciprocal rules of discovery by order of this court in 1975. The Minnesota Rules of Criminal Procedure supersede any prior case law of statutes to the contrary.[5] The United States Supreme

4. A second, and identical, order was issued by the Ramsey County District Court on April 4, 1979.

5. Existing Minnesota law was therefore changed by, *inter alia*, the automatic overruling

Court has consistently held that reciprocal rules of discovery and testimony in a criminal setting have no constitutional infirmities.[6]

The applicable Minnesota rule is contained in Minn.R.Crim.P. 20.03, subds. 1 and 2. Under subdivision 1, the defendant must turn over to the prosecutor "all medical reports and hospital and medical records" concerning his mental condition that the trial court determines are "relevant to the issue of the defense of [the defendant's] mental illness or mental deficiency." Subdivision 2 provides that, "the reports and records and any evidence obtained therefrom may be admitted in evidence only upon the issue of the defense of mental illness or mental deficiency * * *." This rule clearly requires disclosure of records of *any* mental examination and report. The Comments to that rule are especially instructive, indicating that Minn.R.Crim.P. 20.03 "permits the disclosure to and *use* by the prosecution of medical reports and hospital and medical records that are relevant to the defense of mental illness or mental deficiency." (Emphasis added.) Because the prosecution may "use" all reports and records that bear on the issue of mental illness, it should have the right to call a defense-retained psychiatrist to testify regarding his findings on this issue. Any other result suppresses evidence that a court or jury needs to know to formulate a just determination concerning the mental illness defense.

We now must proceed to consider whether Rule 20.03, as we have interpreted it, violates any of the defendant's constitutional rights. We conclude that it does not.

No court that has considered whether a defense-retained psychiatrist may be called by the prosecution has held that such a result is constitutionally prohibited.[7] The

only court that has expressly considered this argument concluded that a defendant did not have a constitutional right to prohibit his psychiatrist from being called as a witness by the prosecution. *See Edney v. Smith*, 425 F.Supp. 1038, 1053–55 (E.D.N.Y. 1976), *aff'd mem.*, 556 F.2d 556 (1977). Several reasons compel us to follow Judge Weinstein's holding in *Edney*. First, in *United States v. Baird*, 414 F.2d 700 (2d Cir. 1969), *cert. denied*, 396 U.S. 1005, 90 S.Ct. 559, 24 L.Ed.2d 497 (1970), the court held that a defendant did not have a constitutional right to have his attorney present while being questioned at a pretrial psychiatric interview. The *Baird* court held that such an interview is not a "critical stage" in the proceedings at which the presence of counsel is required, because its principal purpose is to enable the psychiatrist to obtain information necessary to form the basis of an opinion. Specifically, the *Baird* court indicated:

> We are not persuaded that the procedure itself harbors substantial dangers; and, without a more adequate and less speculative showing of actual prejudice, we are not tempted to forge new constitutional rules. In the words of *Wade* [*United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)], the "hazards of serious unfairness to the criminal accused" have not been shown.

414 F.2d at 711. The *Baird* rule has been adopted in every circuit that has considered this issue. *See United States v. Trapnell*, 495 F.2d 22 (2d Cir.), *cert. denied*, 419 U.S. 851, 95 S.Ct. 93, 42 L.Ed.2d 82 (1974); *United States v. Mattson*, 469 F.2d 1234 (9th Cir. 1972), *cert. denied*, 410 U.S. 986, 93 S.Ct. 1513, 36 L.Ed.2d 183 (1973). The *Baird* rule should apply with equal force to the instant case. Because a defendant does not have a constitutional right to have his attorney present while being questioned at a pretrial

of *State v. Fontana*, 277 Minn. 286, 152 N.W.2d 503 (1967), and *State v. Olson*, 274 Minn. 225, 143 N.W.2d 69 (1966).

**6.** For a general discussion of the rationale behind reciprocal rules of discovery, *see State v. Schwantes*, 314 N.W.2d 243 (1981).

**7.** *United States v. Alvarez*, 519 F.2d 1036, 1046 (3d Cir. 1975), and *State v. Pratt*, 284 Md. 516, 519 20, 398 A.2d 421, 423 (1979), merely suggested that the attorney-client privilege, besides having a common-law basis, had reached a level of constitutional significance.

psychiatric interview, it seems anomalous *constitutionally* to prohibit the prosecution from calling the defense psychiatrist to testify in the instant case.

When the true legal issue involves a balance between the privilege statute and the Minnesota Rules of Criminal Procedure, there seems little reason not to interpret the rules adopted by this court to give the defendant and prosecution as complete use of evidence as is possible under constitutional limitations to enhance the search for truth.

■ 4. We find no error in the substitution of an alternate juror for one of the original jurors after the determination of guilt portion of the trial, but before the mental illness portion. A mistrial is required only "[i]f a juror becomes unable or disqualified to perform his duties after the jury has retired to consider its verdict." Minn.R.Crim.P. 26.02, subd. 8. Certainly a juror unfamiliar with the prior deliberations should not be allowed to join the group and participate in the voting without benefit of the prior group discussion. Here, however, there were, in effect, two separate trials on two distinct issues. The alternate juror heard the evidence derived in the initial portion of the trial; but the fact that he failed to participate in the deliberations leading to the finding of proof of the elements of the crime is of no consequence in his deliberations in the mental illness portion of the trial, since the finding of proof of the elements of the crime is an accepted fact, not to be attacked collaterally. No other result would make sense in the practical context of a bifurcated trial. We also note that the procedure followed in this case was not only not objected to by defense counsel, but agreed to as appropriate and nonprejudicial.

5. Finally defendant argues that the trial court abused its discretion in failing to take immediate action after receiving a note from a juror and in denying his motion for a mistrial based on that note and that inaction. He argues further that he was denied effective assistance of counsel because his attorney then failed to request a *Schwartz* hearing.

■ The note from the juror read, "Your Honor, I can't take any more! Can we please go home." The judge, at the time of receipt of the message, was involved in selecting a jury for another case, and, 15 or 20 minutes later, he received a note that the jury in defendant's case had reached a verdict. Defense counsel asked that the jury be polled, and all jurors answered that the verdict read was their true verdict. After the jury was discharged, defense counsel asked for further questioning of the jurors, a request, in effect, for a *Schwartz* hearing,[8] which was denied. To have made a formal motion for a *Schwartz* hearing after the motion for a mistrial was denied would have been an exercise in futility. Under the facts and circumstances of this case we find no error, nor do we find that defendant was denied the effective assistance of counsel.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.

WAHL, Justice (concurring specially).

This court has not previously considered whether the attorney-client privilege should apply to exclude testimony of a defense psychiatrist who is not called by the defense but is called by the prosecution to rebut the defense of mental illness. The issue has been considered, however, by a number of state and federal courts in factual situations which are precisely or closely analogous to the situation presented in defendant's case. Every court, with the exception of *People v. Edney*, 39 N.Y.2d 620, 350 N.E.2d 400, 385 N.Y.S.2d 23 (1976), has concluded that the attorney-client privilege

---

8. Under Minn.R.Crim.P. 26.03, subd. 19(6), a defendant who has reason to believe that the verdict is subject to impeachment may request a summary hearing at which the jurors would be interrogated under oath. This procedure is

designed to prevent defeated attorneys or litigants from harassing jurors. *Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 104 N.W.2d 301 (1960).

should be applicable, though some courts have gone on to find waiver or harmless error in the facts at hand. *See United States v. White*, 617 F.2d 1131, 1135 (5th Cir. 1980) (dicta); *United States v. Alvarez*, 519 F.2d 1036 (3d Cir. 1975); *Houston v. State*, 602 P.2d 784 (Alaska 1979); *Pouncy v. State*, 353 So.2d 640 (Fla.Dist.Ct.App. 1977) (dicta); *State v. Pratt*, 284 Md. 516, 398 A.2d 421 (1979); *People v. Hilliker*, 29 Mich.App. 543, 185 N.W.2d 831 (1971); *State v. Kociolek*, 23 N.J. 400, 129 A.2d 417 (1957); *State v. Moore*, 45 Or.App. 837, 609 P.2d 866 (1980).

In the case at bar it was necessary for defendant's attorney to request the services and assistance of a psychiatrist to interpret for him defendant's communication to his attorney with regard to defendant's mental condition. As the *Alvarez* court noted, the psychiatrist will of necessity make inquiry about the facts surrounding the alleged crime just as the attorney will. Just as disclosures made by defendant to the attorney cannot be used to furnish proof in the state's case, so disclosures made by defendant to the attorney's expert should be equally unavailable, at least until that expert is placed on the witness stand. 519 F.2d at 1046–47. I would hold such disclosures to be protected by the attorney-client privilege.

To allow the attorney-client privilege to control in the limited factual situation before us in no way changes the primary structure, intent or coherency of the Minnesota Rules of Criminal Procedure adopted in 1975. Those rules contain no specific provision authorizing the calling of the defense psychiatrist by the prosecution but do otherwise provide necessary information to prosecuting attorneys.

Rule 20.02, subd. 1 of the Minnesota Rules of Criminal Procedure provides: "The court having trial jurisdiction over the offense charged may order a mental examination of the defendant when the defense has notified the prosecuting attorney pursuant to Rule 9.02, subd. 1(3)(a) of an intention to assert a defense of mental illness or deficiency * * *." If the mental examination is ordered, Minn.R.Crim.P. 20.02, subd. 2 provides that the court "shall appoint at least one qualified psychiatrist, or clinical psychologist, or physician experienced in the field of mental illness to examine the defendant and report upon his mental condition." That examination may be observed, upon request, by a psychiatrist for either prosecution or defense. *Id.* If the defendant refuses to be examined or to participate adequately in the court-ordered examination, defendant may be prohibited from introducing evidence as to his mental condition. *Id.*, subd. 3. The report of the court-ordered examination is then forwarded to the judge who issued the order, and he forwards copies thereof to the counsel for prosecution and defense. *Id.*, subd. 4. Nowhere does Rule 20.02 give the prosecution the right to observe or receive a report of an examination of the defendant by the defendant's own psychiatrist. The written report provided for in Rule 20.02, subd. 4, clearly refers to the court-ordered examination.

Rule 20.02, subd. 5, provides in pertinent part that "If [the defendant's] mental condition is an issue, any party may call the person who examined the defendant at the direction of the court to testify as a witness at the trial and he shall be subject to cross-examination by any other party." When read in conjunction with Rule 20.02, subd. 2, which requires a court-appointed doctor in all mental illness cases and makes appointment of other experts permissive, the use of the singular when referring to "person" leads me to conclude that subd. 5 refers only to the court-appointed expert. Under Rule 20.02, subd. 6(1), if defendant relies solely on a defense of mental illness, "statements made by the defendant for the purpose of *the* mental examination and evidence obtained as a result of the statements shall be admissible at the trial upon that issue." (Emphasis added.) The examination referred to can only be the examination ordered by the court under Rule 20.02, subds. 1 and 2.

Minn.R.Crim.P. 20.03, subd. 1 provides that when the defendant raises the defense

of mental illness or mental deficiency he may be ordered to turn over to the court "copies of all medical reports and hospital and medical records" concerning this mental condition which are "relevant to the issue of the defense of his mental illness or mental deficiency." The rule includes all such records "previously or thereafter made." *Id.* If the judge determines that the documents are relevant, they must be given to the prosecution. Subdivision 2 limits the use of such records to use as evidence on the mental illness issue. While this rule might be construed so as to require disclosures of records of any mental examination, it applies literally to medical or hospital records and reports. We do not take it to apply to reports made by defense psychiatrists to defense lawyers about the defendant's mental condition as it relates to legal questions. Reports of psychiatrists who will be called as defense witnesses, or records which will be introduced at trial, remain discoverable under Minn.R.Crim.P. 9.02.

Rule 9.02, subds. 1(1) and 1(2), governing pre-trial disclosure by the defense without court order, limits disclosure to tangible objects, documents and reports which the defendant intends to introduce as evidence or which are related to the testimony of a witness whom the defendant intends to call. Similarly, under Rule 9.02, subd. 1(3)(a) and (b), the defense need disclose to the prosecution only the names and statements of persons whom the defendant intends to call as witnesses at the trial. We noted in *State v. Malzac*, 309 Minn. 300, 309 n. 9, 244 N.W.2d 258, 263 n. 9 (1976), that Rule 9.02 is based upon ABA Standards for Criminal Justice, Discovery and Procedure Before Trial (Approved Draft, 1970) §§ 3.1, 3.2, 3.3. *See* Rule 9, Comment, 49 Minn.Stat.Annot. 112 (West 1979). Both the Comment to Rule 9 and the ABA (approved draft) Standard indicate that the restrictions on disclosure by the defendant were considered necessary to avoid the possibility of infringement on the defendant's constitutional rights, especially on the privilege against self-incrimination.

The prosecution has access to the court-appointed expert and the records of the court-ordered examination. In addition, under Rule 20.02, subd. 2, the prosecution has the right to retain its own psychiatrist either to observe the court-ordered examination or to conduct its own examination or both. There is no showing on this record that a dearth of psychiatric evidence or witnesses available to the prosecution exists. Rule 20.02, subd. 3 makes adequate provision for prohibiting defendants from introducing evidence of their mental condition if they refuse to participate in the court-ordered examinations.